## S09A0928. QUARLES v. QUARLES.

(683 SE2d 583)

CARLEY, Presiding Justice.

Before Richard Henry Quarles (Husband) and Suzanne Elizabeth Quarles (Wife) were married in 2000, they entered into an agreement wherein, among other things, the parties waived any and all rights to alimony in the event of divorce. In 2007, Husband filed a complaint for divorce, and Wife counterclaimed for divorce in her answer. Husband then filed a motion for partial summary judgment, seeking to enforce the prenuptial agreement.

After a hearing, the trial court found that there was no genuine issue of material fact as to the enforceability of the agreement. The trial court then entered an "Order on the Plaintiff's Motion for Partial Summary Judgment," finding that the prenuptial agreement satisfies all of the prerequisites to enforceability set forth in *Scherer v. Scherer,* 249 Ga. 635, 641 (3) (292 SE2d 662) (1982) and concluding that Wife is therefore not entitled to alimony. Wife appeals from this order pursuant to our grant of her application for discretionary appeal.

The denomination, procedural context, and language of the trial court's order clearly show that the court was ruling on the motion for partial summary judgment and, although the order did not expressly so state, its effect was to grant partial summary judgment in favor of Husband. See *Howell Mill/Collier Assoc. v. Pennypacker's,* 194 Ga. App. 169 (1) (390 SE2d 257) (1990). "Summary judgment is to be granted *only* if 'there is no genuine issue as to any material fact. . . .' OCGA § 9-11-56 (c)." (Emphasis in original.) *Georgia Canoeing Assn. v. Henry,* 263 Ga. 77 (428 SE2d 336) (1993). Indeed, Husband argues on appeal that there is no such issue of material fact. He could have moved to enforce the prenuptial agreement. See *Alexander v. Alexander,* 279 Ga. 116 (610 SE2d 48) (2005). In such instances, "the trial court essentially sits in equity and has discretion to 'approve the agreement in whole or in part, or refuse to approve it as a whole.' [Cit.]" *Alexander v. Alexander,* supra at 117-118. On appeal, the trial court's disposition of a motion to enforce a prenuptial agreement is evaluated under the abuse of discretion standard of review. *Alexander v. Alexander,* supra at 117. See also *Blige v. Blige,* 283 Ga. 65,

66, 68 (2) (656 SE2d 822) (2008) (where wife moved to have ante-nuptial agreement set aside and trial court conducted a pre-trial evidentiary hearing). However, instead of moving to enforce the parties' agreement, Husband "moved for [partial] summary judgment. On summary judgment, a trial court is not authorized to resolve disputed issues of material fact. A trial court is authorized only to determine whether disputed issues of material fact remain." *Georgia Canoeing Assn. v. Henry*, supra at 78.

The first prong of the *Scherer* test requires that the party seeking enforcement "demonstrate that . . . the antenuptial agreement was not the result of fraud, duress, mistake, misrepresentation, or nondisclosure of material facts . . . ." *Blige v. Blige*, supra at 67 (2). In this case,

> [i]t is . . . undisputed that the agreement fails to disclose Husband's income and that Wife waived her right to seek alimony as part of the agreement. Husband's income, therefore, was material to the antenuptial agreement and would have been a critical factor in Wife's decision to waive alimony. [Cit.]

*Corbett v. Corbett*, 280 Ga. 369, 370 (1) (628 SE2d 585) (2006). The trial court found that Husband's "income was . . . disclosed prior to the signing of the Prenuptial Agreement" and that Wife "knew [his] income and his general financial circumstances prior to executing the Prenuptial Agreement." Husband's testimony provided some evidence that his income was disclosed. He argues that Wife did not directly dispute that testimony, but rather stated that she did not recall that Husband disclosed his income. However, this is not an accurate characterization of Wife's testimony. When asked whether Husband disclosed his yearly income to her anytime up to the day she executed the agreement, Wife responded, "No, I do not recall that at all." Thus, she began with a definite negative answer and reinforced it by insisting that she did not recall any disclosure "at all[,]" which means "in any way, to any extent, on any occasion . . . ." *The New Shorter Oxford English Dictionary* 53 (1993). Moreover, "[q]uestions relating to witness credibility . . . are for the factfinder. For summary judgment purposes, we must construe [Wife's] testimony in the light most favorable to [her]." *Holmes v. Achor Center*, 249 Ga. App. 184, 193 (2) (c), fn. 27 (547 SE2d 332) (2001). Accordingly, there was a genuine issue of material fact regarding whether Husband disclosed his income to Wife prior to execution of the prenuptial agreement.

Citing *Mallen v. Mallen*, 280 Ga. 43, 46 (1) (c) (622 SE2d 812) (2005), Husband argues that Wife had a duty to inquire as to his

financial situation. However, we have already held that such a

> reading of *Mallen* turns *Scherer*'s disclosure requirement on its head. . . . [W]e have repeatedly recognized that *Scherer* imposes an affirmative duty of full and fair disclosure of all material facts on parties entering into an antenuptial agreement. [Cits.] . . . In short, the "duty of inquiry" envisioned by [Husband] is incompatible with the duty of full and fair disclosure recognized by *Scherer* and its progeny. Finally, in *Mallen*, we did not rest our decision upholding the trial court's enforcement of the antenuptial agreement on [the wife's] failure to inquire into [the husband's] financial status prior to execution of the antenuptial agreement.

*Blige v. Blige*, supra at 70-71 (2). Husband further argues that Wife had sufficient information, specifically the parties' spending habits while dating, during which time Wife was unemployed, to have given her a general idea of the character and extent of Husband's assets and income. On the record before us, however, we cannot say as a matter of law that "the parties' standard of living before the marriage . . . would have put Wife on notice that Husband failed to disclose material facts so as to render the nondisclosure immaterial. [Cits.]" *Corbett v. Corbett*, supra. See also *Blige v. Blige*, supra at 71 (2) (distinguishing the "unique circumstances" of *Mallen* where the parties lived together for four years before execution of the antenuptial agreement and the wife was well aware that the husband was a wealthy man with substantial income from his business and other income-producing assets).

Because there was a genuine issue of material fact as to the first prong of the *Scherer* test, we conclude that the trial court erred in granting partial summary judgment in favor of Husband.

> "(A) trial court's grant of summary judgment will not be sustained if there is *any* genuine issue of material fact, however imbalanced it may appear." (Emphasis in original.) [Cit.] "Since issues of fact remain, summary judgment is inappropriate, and the trial court's ruling must be reversed."

*Georgia Canoeing Assn. v. Henry*, supra. Accordingly, it is not necessary to consider whether the trial court erred in holding that the parties' prenuptial agreement met the remaining portions of the *Scherer* test or whether the agreement was void as asserted by Wife. See *Corbett v. Corbett*, supra at 371 (2). Because of the differences

between appellate review for abuse of discretion and review of the grant or denial of summary judgment, as outlined above, we remind the bench and bar that, " 'while summary judgment may be a prompt, inexpensive, and fair means of resolving many controversies at law, it can become otherwise' " in matters of equity. *Georgia Canoeing Assn. v. Henry*, supra at 79.

*Judgment reversed. All the Justices concur.*

### DECIDED SEPTEMBER 28, 2009.

*Terry D. Tolbert*, for appellant.
*Lawrence L. Washburn III*, for appellee.