A10A0354. USF CORPORATION et al. v. SECURITAS SECURITY SERVICES USA, INC.

(699 SE2d 554)

DOYLE, Judge.

Securitas Security Services USA, Inc., filed a breach of contract claim against USF Corporation and YRC Regional Transportation, Inc. (collectively, "the defendants"), alleging that the defendants failed to pay for contracted security services. The defendants answered, contending that Securitas breached the contract first, and filed counterclaims for breach of contract and negligence. The trial court granted summary judgment to Securitas, and the defendants appeal. For reasons that follow, we affirm in part and reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a [denial] of summary judgment."[1]

So viewed, the record reveals that on February 15, 2005, Securitas contracted with USF Corporation to provide security services at USF's Atlanta facility. In May 2005, YRC Regional Transportation acquired USF and assumed control of all of USF's properties. On October 27, 2005, YRC and Securitas entered into a

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

new contract for security services, which differed from the previous contract between USF and Securitas. The Atlanta YRC facility sustained break-ins, thefts, and vandalism on April 24, 2006, June 30, 2006, October 12, 2006, and January 24, 2007. Deeming Securitas's failure to contact the police and notify YRC after each incident a breach of the parties' agreement, YRC withheld payment from Securitas beginning on May 19, 2006. Securitas filed suit against USF and YRC for breach of contract, and the defendants answered, alleging that Securitas breached the contract first, and asserting counterclaims for breach of contract and negligence based on damages they sustained during the break-ins.

On May 26, 2008, Securitas moved for summary judgment on all claims, including the defendants' counterclaims, arguing that the defendants had admittedly failed to pay for security services and that the defendants' breach of contract and negligence claims were barred under the February contract. In response, the defendants alleged that the October contract controlled and that Securitas breached the terms of that agreement before the defendants failed to pay the invoices provided by Securitas. The trial court granted summary judgment to Securitas, concluding that (1) the February contract controlled; (2) the defendants breached the February contract by failing to pay the invoices submitted by Securitas; (3) the defendants' claims for breach of contract and negligence were barred by the February contract, which (a) required timely notice of any dispute regarding the invoices, and (b) specifically provided that Securitas "makes no representations . . . that the services will prevent any loss or damage"; and (4) even if the October contract controlled, the defendants failed to establish that Securitas breached the contract or was negligent. Because the trial court concluded that there remained a question of fact with regard to damages, it reserved ruling on the amount of damages until after a damages hearing. Following the damages hearing, the trial court issued an order awarding damages to Securitas in the amount of $90,352.79. This appeal followed.

1. The defendants argue that the trial court erred by applying the terms of the February contract instead of the October contract. We agree.

In its May 29, 2008 motion for summary judgment and supporting documents, Securitas argued that the February 2005 contract between USF and Securitas was controlling, failing to even mention the subsequent October 2005 contract between Securitas and YRC,[2]

---

[2] The October contract states that "[t]his contract sets forth the entire agreement between [YRC] and [Securitas]."

which had acquired USF.[3] In response, the defendants argued that the October contract controlled, not the February contract.[4] At the subsequent summary judgment hearing held on August 8, 2008, the defendants indicated that Securitas had produced a copy of the October contract in response to the defendants' motion to compel previously filed in July 2008. Despite the fact that it had produced the document in discovery, Securitas took the position that the October contract had not been properly authenticated because Gary Meeks's (head of security for YRC) affidavit stated that it was given "based upon [his] personal knowledge or knowledge that [he] gained from reliable sources."

In its order granting summary judgment to Securitas, the trial court concluded that the February contract controlled.[5] At the subsequent damages hearing, the October contract between YRC and Securitas was admitted during the testimony of the vice president for Securitas's Georgia region, who acknowledged that the agreement was signed by Securitas's global accounts vice president. And in its subsequent damages order, the trial court acknowledged that "the October 2005 contract . . . is controlling."

Nevertheless, Securitas continues to argue on appeal that the February contract controls[6] because the October contract "was not in evidence before the trial court before judgment as to liability was entered in favor of Securitas." We find this argument unpersuasive.

Pretermitting whether Meeks's affidavit provided sufficient authentication of the October contract, Securitas produced it during discovery. Securitas does not contend that the dates or signatures of the parties' representatives contained therein are not genuine or that the contract did not accurately memorialize the parties' agreement. In fact, Securitas's own witness acknowledged the signature of a Securitas officer on the document. "[A] document can be authenticated by circumstantial evidence. One such circumstance, when coupled with other evidence, is a party's production of the document during discovery."[7] Further, Securitas sought damages for invoices

---

[3] Securitas filed the affidavit of its northeast Georgia branch manager, to which he attached the February contract between USF and Securitas, stating therein that the February contract was "terminated on or about March, 2007."

[4] The defendants included in their response the affidavit of the security manager for YRC North America Transportation, to which he attached the October contract between YRC and Securitas.

[5] However, we note that the trial court also found that Securitas was entitled to summary judgment even if the October agreement controlled. We address this issue in Divisions 2 and 3, infra.

[6] Securitas also argues in the alternative.

[7] *Salinas v. Skelton*, 249 Ga. App. 217, 220 (1) (547 SE2d 289) (2001). See *Davis v. First Healthcare Corp.*, 234 Ga. App. 744, 746-747 (1) (507 SE2d 563) (1998) (noting content as circumstantial evidence of authenticity). See also *John Paul Mitchell Systems v. Quality King*

that the defendants failed to pay beginning on May 18, 2006, more than six months after Securitas and YRC executed the October 2005 contract. Under these circumstances, we conclude that Securitas's argument below and on appeal that the February 2005 contract is controlling is without merit.[8] Thus, the trial court erred to the extent that it applied the terms of the February 2005 contract to this case.

2. In the order granting summary judgment, the trial court concluded that even if the October contract controlled, Securitas was entitled to summary judgment because there was no merit to the defendants' claim that Securitas breached the parties' agreement. The defendants argue that this finding was erroneous, and we agree.

The October contract required Securitas to "[c]ontact YRC . . . on a weekly basis or as often as required and assist with special problems, emergencies, and extra staffing requirements," and to "[r]eview the security program on a continual basis," "[a]ssist YRC . . . in preparing policies and procedures for the protection of its assets," and "[a]ssure that post orders are updated and all other special and general orders are posted and reviewed by all security officer personnel." One of the post orders included in the agreement required that

> [i]n the event of a serious security issue or breach, all security officers will follow the security protocol in the call order listed:
> 1. Contact the local police immediately
> 2. Contact the security company supervisor
> 3. Contact the 24 hour line at [a designated telephone number with the area code 913]

Here, there is evidence in the record that on April 24, 2006, a Securitas security officer discovered that the gate to the Atlanta facility was unsecured, the phone box had been vandalized, and two backup batteries were missing. The officer tried to contact YRC by calling a 1-800 number, but "the person who answered the phone ha[d] no knowledge of [YRC] owning this property." There is no evidence that the security officer called the police or contacted the 913 number designated in the post order. On June 30, 2006, a Securitas officer discovered that sinks were destroyed and aluminum

*Distrib.*, 106 FSupp.2d 462, 472 (II) (A) (S.D. N.Y. 2000), citing *United States v. Brown*, 688 F2d 1112, 1116 (7th Cir. 1982).

 [8] See generally OCGA § 13-4-5 ("A simple contract regarding the same matter and based on no new consideration does not destroy another simple contract between the same parties; but, if new parties are introduced so as to change the person to whom the obligation is due, the original contract is at an end.").

pipes to the sinks had been stolen, as well as a cell phone, a portable air conditioning unit, and a microwave. Although an officer did call the police, no one contacted the designated 913 number; instead, they tried to contact YRC at the previously unsuccessful 1-800 number. On October 12, 2006, a Securitas officer discovered "serious damage" that "was really bad"; ceiling tiles were missing, copper wiring had been stolen, the air conditioning unit had been vandalized and parts of it had been stolen, and there was a lot of damage on the dock, including to the power box. The officer did not contact the police, and there is no evidence that he contacted the designated 913 number. Finally, there was another break-in at the facility on January 24, 2007, during which a window on the door of the garage was broken. The security officer did call the police, but again, there is no evidence that anyone from Securitas contacted the 913 number. The defendants were not notified of the break-ins until October 19, 2006, "through contact with the property's realtor," not Securitas. There is no evidence that Securitas otherwise notified the defendants of the break-ins or advised them of the need to amend their security policy or procedures so that they could increase security or take other measures to prevent or mitigate the damage to their property.[9]

The foregoing evidence presents a question of fact regarding whether Securitas's failure to comply with the post orders constituted a breach of the parties' October 2005 agreement.[10] Thus, the trial court erred by granting summary judgment to Securitas on its breach of contract claim against the defendants and on the defendants' counterclaim for breach of contract.[11]

3. The defendants also contend that the trial court erred by granting summary judgment to Securitas as to their counterclaim for negligence. This argument is without merit.

"It is well settled that mere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defen-

---

[9] In their brief, the defendants claim that their damages from the break-ins exceed $250,000. They also assert that because Securitas failed to properly notify them of the break-ins, they could not file timely insurance claims for the resulting damage.

[10] We disagree with the trial court's conclusion that because the theft and vandalism did not occur while Securitas officers were on duty, the defendants' claims regarding a breach of the contract fail as a matter of law. At least one of the break-ins at the facility occurred when Securitas was required to and billed for 24 hour/7 day a week service. And, irrespective of when a security officer was on duty, the contract required Securitas to contact YRC weekly to assist with special problems, emergencies and extra staffing requirements, and in the event of a serious security issue or breach, to follow the security protocol.

[11] See *Quarles v. Quarles*, 285 Ga. 762, 764 (683 SE2d 583) (2009).

dant also breaches an independent duty imposed by law."[12] A review of the counterclaims and the October 2005 contract indicates that the duties that the defendants allege were breached by Securitas

> arise directly from, not independent of, [the] contract. All issues dealing with the extent of the duties owed to [the defendants], whether the duties were breached, the injury which flowed from the breach, and the remedy for any such breach are controlled by [the parties'] contract. From these facts it is clear that in the absence of its contractual duties, [Securitas] owed and breached no independent duty to [the defendants].[13]

Therefore, the trial court did not err by granting summary judgment to Securitas as to the defendants' counterclaim for negligence.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 8, 2010 —
RECONSIDERATION DENIED JULY 29, 2010.

*Molden, Holley & Thompson, Regina S. Molden*, for appellants.
*Swift, Currie, McGhee & Hiers, Lynn M. Roberson*, for appellee.

---

[12] (Footnotes omitted.) *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 754 (2) (556 SE2d 517) (2001).

