Natala S. STROMAN, Plaintiff,

v.

BANK OF AMERICA CORPORATION; Bank Of America, N.A.; BAC Home Loans Servicing, LP (a subsidiary of Bank of America, N.A. and formerly known as Countrywide Home Loans Servicing, L.P.); Experian Information Solutions, Inc.; and ABC corporations 1–3, Defendants.

Civil Action No. 1:10–CV–4080–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 30, 2012.

Auden L. Grumet, The Law Office Of Auden L. Grumet, LLC, Atlanta, GA, for Plaintiff.

Andrew G. Phillips, McGuire Woods LLP, Atlanta, GA, for Bank of America.

James Williams, Jr., Jones Day, Atlanta, GA, for Experian.

J. Anthony Love, Betsey L. Tate, King & Spalding LLP, Atlanta, GA, for Equifax.

Alex Barfield, Hawkins & Parnell, Atlanta, GA, for TransUnion.

## ORDER

AMY TOTENBERG, District Judge.

This matter is before the Court on Defendants Bank of America Corporation, Bank of America, N.A. ("BOA"), and BAC Home Loans Servicing, LP's ("BAC") (collectively, the "Bank Defendants" or "BOA Defendants")[1] motion to dismiss [Doc. 24]. Plaintiff Natala Stroman has alleged claims against Defendants under common law and a number of consumer law statutes for conduct arising out of the servicing of her home mortgage loan. For the reasons set forth below, the Court

---

1. Plaintiff alleges that BAC became her loan servicer as of May 1, 2009, and it appears that all of the conduct alleged herein should be asserted against BAC. However, Plaintiff occasionally refers to BOA and the "BOA Defendants," and for purposes of this motion the Court assumes that all three entities engaged in the conduct alleged.

**GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I. STANDARD FOR MOTION TO DISMISS

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the nonmovant's favor and accepts the allegations of facts therein as true.[2] *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## II. BACKGROUND[3]

On or about January 31, 2008, Plaintiff Natala Stroman obtained a residential mortgage loan from Quicken Loans to finance the purchase of her home in Hampton, Georgia. (Compl. ¶ 15.) About two months after the loan closing, the servicing of her loan was transferred to Countrywide Home Loans Servicing, L.P. (*Id.*) The servicing was transferred a second time, to Defendant BAC, on May 1, 2009. (*Id.*) Plaintiff's loan is owned by Fannie Mae. (*Id.* at ¶ 19.)

Due to the economic downturn, Plaintiff began to experience financial hardship. (*Id.* at ¶ 18.) Despite this hardship, Plaintiff alleges that she has never failed to make a timely payment under her loan contract. (*Id.* at ¶ 17.) In the summer of 2009, with the help of the Neighborhood Assistance Corporation of America ("NACA"), Plaintiff applied for a loan modification under the Home Affordable Modification Program ("HAMP"). (*Id.* at ¶ 21.) On November 19, 2009, BAC sent Plaintiff an email (through her NACA representative) stating:

> We have reviewed the case and will be able to offer a loan modification. A trial period of 4 months will be required, at the new PITI payment of $1,234.00 for 12/01/09 through 03/01/10. If the trial period is successful, New PI: $905. New PITI: $1,234.00. New UPB: $232,554.16. Deferred principal: $26,997.27. Interest bearing principal: $205,556.88. First payment due with modification documents. Interest rate 3.0% for remaining term of the loan.

(*Id.* at ¶ 23.) Plaintiff responded in writing the same day stating that she accepted this proposal.[4] (*Id.* at ¶ 24.)

---

2. The Court notes Plaintiff's objection to portions of Defendants' motion to dismiss [Doc. 27], and the Court has not considered the affidavit which Defendants improperly attached to their motion.

3. The factual background the Court describes below is based on the allegations in Plaintiffs complaint, which the Court construes in Plaintiff's favor consistent with the standard discussed above.

4. Under the facts described, it appears this initial offer was for a trial modification and that Plaintiff made all payments pursuant to the trial modification. (*See generally* Compl.)

Plaintiff followed up with Bank of America on or about March 5, 2010, regarding the status of her loan modification. (*Id.* at ¶ 26.) On March 12, 2010, BAC's Loss Mitigation Department sent Plaintiff an email explaining:

We have reviewed the case and are offering a modification of the loan. New PI: $781.07, New PITI: $1202.63, New UPB: $232,017.49, Interest bearing principal: $176,732.49. The first payment is due with signed modification documents. 1st payment effective date will be 05/01/2010. An interest rate of 3.00% will be effective for the remaining term of 334 months.

(*Id.* at ¶ 27.) On or about March 24, 2010, Plaintiff received a package dated March 12, 2010, with the enclosed loan modification agreement, which BAC requested Plaintiff execute and return by March 29, 2010. (*Id.* at ¶ 28.) Plaintiff returned the signed and notarized agreement, along with a money order for the first modified payment, to BAC on March 25, 2010, by Fed Ex. (*Id.* at ¶ 31.)

Plaintiff began to experience problems in her dealings with the BOA Defendants after the loan modification was finalized. Specifically, Plaintiff states that BOA has continued to send her billing statements with erroneous late fees and past-due balances and has also sent her "dunning collection letters," some of which threatened negative credit reporting, acceleration of the loan, and foreclosure. (*Id.* at ¶¶ 37–38.) BOA placed Plaintiff's November 2009–February 2010 payments pursuant to the modification into a holding account. (*Id.* at ¶¶ 25, 44.) Radian Guarantee, Inc., Plaintiff's mortgage insurer, sent her two letters reflecting that BOA had sent Radian derogatory information about the status of Plaintiff's mortgage loan. (*Id.* at ¶ 43.) In June 2010 BOA began a barrage of collection calls regarding Plaintiff's June payment, although she had already sent it more than a week earlier. (*Id.* at ¶ 62.)

Although Plaintiff has made all payments under the modification in a timely manner, and BOA has acknowledged this fact, BOA has been transmitting negative information to the credit reporting agencies ("CRA's"). (*Id.* at ¶¶ 45, 48, 49.) Plaintiff disputed the negative information with the CRA's on three separate occasions. (*Id.* at ¶ 50.) Plaintiff's counsel sent demand letters to the CRA's and the BOA Defendants in which he explained the errors and demanded that they be corrected. (*Id.*) BOA acknowledged the credit reporting errors as early as March, 2010, and have continually promised to correct the reporting, but Plaintiffs credit reports still reflect the erroneous information. (*Id.* at ¶ 52.)

As a result of this negative credit reporting, Plaintiff's credit score has gone down, BOA suspended Plaintiff's overdraft line of credit, BOA reduced Plaintiff's Visa credit card limit from $17,000 to $5,400, and Discover Card reduced Plaintiffs credit card limit. (*Id.* at ¶¶ 54, 55.) The BOA mortgage is the only negative reporting on Plaintiff's credit reports. (*Id.* at ¶ 57.) The damage to her credit and the harassing calls and letters regarding alleged missed payments have caused Plaintiff to suffer stress, embarrassment, humiliation, anxiety, and worry. (*Id.* at ¶ 56.)

## III. DISCUSSION

Plaintiff asserts the following claims based on these facts: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; (2) violations of the HAMP program; (3) violations of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 et seq.; (4) violations of the Fair Credit Reporting Act ("FCRA") and Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681 et seq.; (5) violations of the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 et seq.; (6) violations of the Georgia Fair Lending Act ("GFLA"), O.C.G.A. § 7–6A–1 et seq.; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; (9) negligence; (10) defamation-slander-libel; (11) unjust enrichment; (12) conversion; (13) theft by conversion; (14) theft by deception; (15) violations of the Georgia Fair Business Practices Act ("FBPA") and Deceptive Trade Practices Act ("DTPA"); (16) fraud; (17) emotional distress; (18) civil RICO; (19) general liability; (20) agency; (21) miscellaneous relief; and (22) injunctive and declaratory relief.

The Bank Defendants have moved to dismiss all of Plaintiffs claims against them for failure to state a claim upon which relief may be granted. The Court considers each claim in turn.

## A. RESPA (Count 1)

█ Plaintiff asserts that the BOA Defendants have demonstrated a "pattern and practice of repeatedly and intentionally/knowingly" violating RESPA by failing to timely and properly acknowledge and respond to Plaintiff's Qualified Written Requests ("QWR's"), failing to take corrective action identified in the QWR's, failing to provide Plaintiff the information requested in the QWR's, failing to cease its collection efforts after receiving the QWR's, and providing erroneous information to the credit bureaus related to alleged overdue payments disputed in her QWR's. (Compl. ¶¶ 65–72.)

Defendants argue that Plaintiff has failed to plead the contents of her alleged RESPA QWR's or attach them to the complaint in order to allow the Court and Defendants to determine (a) if they requested information that was covered by RESPA, and (b) if Defendants timely responded. (Br. Supp. Mot. Dismiss at 17–19.) Plaintiff responds that she has referenced "more than two qualifying QWR

letters" in her complaint, and points to her June 10, 2010, and July 29, 2010, letters (referenced in paragraphs 94–95) and Exhibit F to the Complaint, an undated letter with certified return receipt cards showing that it was mailed on April 1, 2010. (Resp. at 23.)

The relevant section of RESPA provides:

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Plaintiff's April 1st letter includes her name and the last four digits of her account number (and states that Plaintiff has attached a letter from Bank of America dated 3/25/10, which likely would have provided further information to identify her account), and explains that she knows her payments have not been properly credited to her account because the attached credit report shows it as 90+ days past due. (Compl. Ex. F.) This qualifies as a "statement of the reasons for the belief of the borrower . . . that the account is in error." 12 U.S.C. § 2605(e)(1)(B). Therefore, the April 1st letter (Compl. Ex. F) does appear to be a QWR. According to Plaintiff's other allegations, Bank of America did not respond. (Compl. ¶ 67.)

Because they are not attached, the Court cannot determine whether Plaintiff's

June 10th or July 29th letters would meet the definition of a QWR. BOA's response on July 7 to the June 10 letter does fall within the 60–day time frame provided by § 2605(e)(2), although it is not clear whether BOA acknowledged receipt of the June 10th letter within 20 days of receipt, as required by § 2605(e)(1)(A). However, regardless of whether these other instances might show violations of RESPA, Plaintiff has pled a viable claim under RESPA based on BOA's alleged failure to timely respond to the April 1st letter.[5] Moreover, Plaintiff has alleged facts making it plausible that BOA violated 12 U.S.C. § 2605(e)(3) by providing negative information to a credit agency during the 60–day period following receipt of that letter.[6]

Defendants' assertion that Plaintiff has failed to adequately allege that she suffered actual damages from the violations or that the BOA Defendants demonstrated a pattern and practice of conduct violating the statute is incorrect. (Defs.' Reply at 4–5.) A plaintiff must allege either actual damages flowing from the violation or a pattern and practice of Defendants' violation of the statute in order to state a claim under RESPA. *Frazile v. EMC Mortg. Corp.*, 382 Fed.Appx. 833, 836 (11th Cir. 2010); *see also* 12 U.S.C. § 2605(f)(1). Plaintiff has alleged that as a result of Defendants' failure to correct the payment

history errors that she pointed out in her QWR's, her credit score sank and she experienced reduced access to credit. (Compl. ¶¶ 49, 54.) Thus, Plaintiff alleges that BOA's conduct caused her concrete economic harm. Further, Plaintiff's assertion that the BOA Defendants had a pattern and practice of violating RESPA is bolstered by her specific allegation that she sent seventeen QWR's to the bank, all of which went unanswered or received an inadequate response.[7] (*Id.* at ¶¶ 33, 37, 39.) At the motion to dismiss stage, Plaintiff has alleged facts making it plausible that she suffered actual damages and that BOA committed a pattern of violations. For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiffs RESPA claim.

### B. HAMP Violations (Count 2)

■ The Home Affordable Modification Program ("HAMP") does not provide for a private right of action. *See Simon v. Bank of America, NA.*, 2010 WL 2609436, at \*9–10, 2010 U.S. Dist. LEXIS 63480, at \*26–27 (D.Nev. June 23, 2010) (summarizing district court opinions finding no private cause of action for servicer's failure to consider a borrower for a HAMP modification).

■ Plaintiff also has not pled facts supporting a contractual third-party bene-

---

5. Defendant's assertion that because this letter was sent to "Bank of America" it was not addressed to a servicer for purposes of RESPA rings hollow due to the fact that BAC often refers to itself as Bank of America Home Loans. (*See, e.g.,* Compl. Ex. AA.) To the extent that BOA/BAC claims it did not receive one or more of Plaintiff's purported QWR's because they were not sent to its designated QWR address, it could explore this issue through discovery and perhaps on a motion for summary judgment.

6. Plaintiff has withdrawn and abandoned any claim under 42 U.S.C. § 4012a for flood insurance. (Resp. at 21.)

7. Plaintiff has attached a letter from BOA in which it states, "Unfortunately, the level of maintenance required on your account, necessitated by the modification agreement, was outside the scope of our standard customer service." (Compl. Ex. G.) This letter raises a possible inference, for purposes of a motion to dismiss, that properly and accurately maintaining an account if the loan had been modified fell outside of BOA's standard customer service. This could support an inference that other BOA customers who applied for and obtained loan modifications likewise may have experienced payment disputes and credit reporting errors.

ficiary claim based on violations of the HAMP program. Only intended third-party beneficiaries may enforce a contract. *Speleos v. BAC Home Loans Servicing, LP,* 755 F.Supp.2d 304, 307 (D.Mass.2010). The majority of courts have determined that homeowners are incidental beneficiaries, not intended beneficiaries, of the contract between a participating servicer and the federal government to participate in the HAMP program.[8] *See, e.g., id.* at 310 (holding that allowing a homeowner to raise a third-party beneficiary claim would be inconsistent with the terms of the contract, where Fannie Mae servicer agreement provided, "[t]hese rights and remedies are for our benefit and that of our successors and assigns"); *contra Marques v. Wells Fargo Home Mortg., Inc.,* No. 09–CV–01985–L, 2010 WL 3212131, at *7 (S.D.Cal. Aug. 12, 2010). Plaintiff has not pled facts showing that she is an intended third-party beneficiary of a servicing contract between Fannie Mae and the BOA Defendants. However, Plaintiff has properly alleged a claim for breach of contract based on BOA Defendants' failure to comply with the loan modification agreement, as discussed *infra* in Section G.

Therefore, Plaintiffs claim for violations of HAMP is **DISMISSED.**

### C. Fair Credit Billing Act ("FCBA") (Count 3)

■ Plaintiff asserts a claim under the FCBA, which Defendants claim has no application to the facts alleged in the complaint. Plaintiff admits in response to De-

fendants' motion to dismiss that the FCBA only applies to open-end consumer credit plans.[9] *See* 15 U.S.C. § 1666 (citing § 1637(b)(10)). The FCBA's protections do not extend to closed-end credit, such as the mortgage loan at issue in this case. *See LaPrade v. Abramson,* 2006 WL 3469532 (D.D.C. Nov. 29, 2006). In order to state a claim under the FCBA, Plaintiff would have to allege (1) that the mortgage loan at issue here was a home equity line of credit, or (2) that BOA violated the FCBA with respect to her unsecured line of credit. Instead, Plaintiff simply alleges that her damages here include a reduction in her available credit line by BOA as a result of the negative credit reporting on her mortgage. The reduction in an available credit line does not violate the FCBA. *See* 15 U.S.C. § 1666 et seq. Plaintiff has not claimed that BOA failed to take proper action in response to notification of a billing error on her line of credit, improperly applied any payment toward her line of credit, or took any other action prohibited by the FCBA. Accordingly, Plaintiffs claim under the FCBA is **DISMISSED.**

### D. Fair Credit Reporting Act ("FCRA") (Count 4)

■ Defendants point out, and Plaintiff acknowledges, that Plaintiffs allegations related to furnishing of false information to credit reporting agencies do not support a private right of action. *See* 15 U.S.C. § 1681s–2(c) and (d). However, Plaintiff asserts that she has pled a viable claim against the Bank Defendants for failing to

---

8. Similarly, the cases Plaintiff brought to the Court's attention in her Notice of Supplemental Authority [Doc. 46] do not support a cause of action under HAMP or a third-party beneficiary claim for violation of the servicer participation agreement. *See In re Bank of America HAMP Contract Litigation,* No. 10–MD–02193–RWZ, 2011 WL 2637222 (D.Mass. July 6, 2011), *Stagikas v. Saxon Mortg. Servs., Inc.,* 795 F.Supp.2d 129 (D.Mass.2011).

9. The FCBA provides that if a consumer disputes a charge within 60 days of it first appearing on the periodic statement for her credit account, she may then withhold payment as to that charge until the dispute is resolved, and the creditor shall not make negative credit reports as a result of such withholding. 15 U.S.C. §§ 1666, 1666a.

meet their obligations to investigate her dispute, and such conduct does give rise to a private cause of action under the FCRA. *Id.*

Defendants' sole attack on Plaintiff's claim against them for failure to investigate a claim of inaccurate credit reporting is that although Plaintiff alleges that Defendants were "notified by the CRAs that Plaintiff disputed the accuracy of the information reported," she fails to allege "that the credit agencies determined that she had a viable claim." (Br. Supp. Mot. Dismiss at 28–29, citing Compl. ¶¶ 101–123.) As Plaintiff points out, this argument makes little sense, because the CRA's are not required to provide notice of a dispute to the furnisher if they determine that the dispute is frivolous or irrelevant. 15 U.S.C. § 1681i.

Moreover, once a CRA notifies a furnisher of a dispute, this triggers the furnisher's obligation to conduct an investigation with respect to the disputed information, review all relevant information provided by the CRA, report back to the CRA, correct the reporting to other agencies if the furnisher finds that the information is incomplete or inaccurate, and modify or delete the information so that it will not be reported inaccurately again. 15 U.S.C. § 1681s–2(b). Nothing in the statute limits this obligation on the part of a furnisher to circumstances where the CRA has notified it that the dispute is "viable." *Id.; see also Green v. RBS Nat'l Bank,* 288 Fed. Appx. 641, 642 (11th Cir.2008) (finding the FCRA provides a private right of action against a furnisher for violation of § 1681s–2(b) if the furnisher received notice of the dispute from the CRA); *Pinson v. Equifax Credit Info. Servs.,* 316 Fed.Appx. 744, 751 (10th Cir.2009)

(affirming dismissal where complaint failed to allege that CRA had notified furnisher of the dispute). Plaintiff has pled a plausible claim for violation of the FCRA. Therefore, Defendants' motion to dismiss this claim is **DENIED.**

**E. Fair Debt Collection Practices Act ("FDCPA") (Count 5)**

█ Bank Defendants move to dismiss Plaintiff's claim against them under the FDCPA on the basis that they are not "debt collectors" covered under the statute. This Court agrees. The statute specifically exempts from the definition of debt collector "any person collecting or attempting to collect a debt owed or due ... another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). This exclusion has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default. *See Bailey v. Security Nat'l Serv. Corp.,* 154 F.3d 384, 388 (7th Cir.1998) (holding that a mortgage servicing company not a debt collector under the FDCPA where the debt was not in default when it began servicing it); *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985) (holding that the FDCPA definition of debt collector does not include a mortgage servicing company so long as the debt was not in default at the time it was acquired); *Frazier v. HSBC Mortg. Servs., Inc.,* No. 8:08–CV–2396, 2009 WL 4015574, at *7 (M.D.Fla. Nov. 19, 2009), *aff'd on other grounds,* 401 Fed.Appx. 436 (11th Cir. 2010) (quoting *Perry* ).[10] As Plaintiff alleges that she has never missed a contractual payment on her loan (Compl. ¶ 17),

---

10. Plaintiff's assertion that Defendants cannot benefit from the safe harbor in § 1692a(6)(F)(iii) because they have not re-

ceived an assignment of her loan is not supported by the statutory language or the relevant case authority.

clearly her loan was not in default when BOA/BAC became her servicer.

Plaintiff attempts to argue that notwithstanding the exclusion for mortgage servicers in § 1692a(6)(F)(iii), the statute covers "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Plaintiff argues that because Defendants have "interchangeably used several different names," they are covered under this provision of the statute. (Resp. at 36.) However, by alternating between BAC Home Loans and Bank of America Home Loans, Defendants did not create the impression that a third party debt collector was attempting to collect the debt. *See Schaffhauser v. Citibank (South Dakota) N.A.*, No. 1:05–CV–2075, 2007 WL 2752141, at \*3 (M.D.Pa. Sept. 19, 2007) (noting that the least sophisticated consumer would not conclude from different Citibank names that a third party debt collector was involved); *Wolfe v. Bank One Corp.*, 433 F.Supp.2d 845, 848 (N.D.Ohio 2005) (holding that a creditor does not become subject to the FDCPA by using another name under which it had consistently done business with the consumer). Therefore, the Bank Defendants are not covered by the FDCPA, and Plaintiff's FDCPA claim is **DISMISSED.**

**F. Georgia Fair Lending Act ("GFLA") (Count 6)**

■ Plaintiff claims that the BOA Defendants violated the Georgia Fair Lending Act, specifically O.C.G.A. § 7–6A–3, by imposing improper late fees. This section of GFLA provides in relevant part:

> No creditor or servicer may charge a borrower a late payment charge unless the loan documents specifically authorize the charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not

exceed 5 percent of the amount of the late payment.

O.C.G.A. § 7–6A–3(3).

Plaintiff alleges that although she has made all contractually required payments (prior to and after the contractual loan modification) in a timely manner, Defendants have improperly assessed late fees against her. (Compl. ¶¶ 17, 38, 41, 42, 45, 61.) In essence, Plaintiff alleges that Defendants have charged her a late fee at times when the loan documents (as modified) do not specifically authorize the charge, because she did not pay late. Moreover, in its November 9, 2010, letter, BOA states that "once the modification is implemented in December 2010, your payments will be credited to the account and backdated to the date you originally remitted them." (*Id.* Ex. G.) However, it does not state specifically that all late fees will be canceled or waived.

Plaintiff has alleged facts supporting a claim for violation of O.C.G.A. § 7–6A–3(3). However, the Court notes that Section 7 of GFLA does not authorize statutory damages of two times the interest paid and forfeiture of interest for a violation of paragraph 3 of Section 3. O.C.G.A. § 7–6A–7(a)(2). Therefore, Plaintiff's request for statutory damages under GFLA is **DISMISSED.** The Court **DENIES** Defendant's motion to dismiss Plaintiff's GFLA claim except with regard to the claim for statutory damages.

**G. Breach of Contract (Count 7)**

■ Plaintiff alleges a claim for breach of contract against the Bank Defendants. Defendants claim that Plaintiff has not adequately pled her breach of contract claim because she has not "identified a specific provision in a particular contract that has been breached or how it has been breached by the Bank Defendants." (Br. Supp. Mot. Dismiss at 33.)

Plaintiff alleges that she and the Bank Defendants entered into a binding contractual agreement to modify her original note and security deed as provided in the loan modification agreement. (Compl. ¶¶ 29–32.) Plaintiff attaches the loan modification agreement to the Complaint. (*Id.* Ex. D.) Plaintiff points out that the loan modification agreement provides, "Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement." (*Id.* at ¶ 42.) In addition, Plaintiff alleges that after the parties entered into the modification agreement, Defendants repeatedly charged her late fees when she made payments on time, failed to apply her payments properly according to the terms of the contract, and failed to properly administer Plaintiff's escrow account. (*Id.* at ¶¶ 38, 44, 60, 61, 144.) Thus, Plaintiff has sufficiently pled a breach of contract claim based on Defendants' breach of the loan modification agreement and the note and security deed (as modified). *See White v. BAC Home Loans Servicing, LP,* No. 2:10–CV–119–RWS, 2011 WL 4479299, at *8 (N.D.Ga. Sept. 26, 2011) (parties were contractually bound by signed loan modification agreement). Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim is **DENIED.**[11]

### H. Breach of Good Faith and Fair Dealing (Count 8)

Defendants' only ground for dismissal of Plaintiff's claim for breach of the implied duty of good faith and fair dealing is the failure of Plaintiff's breach of contract claim. (Br. Supp. Mot. Dismiss at 34–35.) Accordingly, as Plaintiff has pled a viable breach of contract claim, Defendants' motion to dismiss her claim for breach of the implied duty of good faith and fair dealing is **DENIED.**

### I. Negligence (Count 9)

Plaintiff alleges in her negligence count that the BOA Defendants have breached certain "contractual duties," express or implied. (Compl. ¶ 151.) As Defendants correctly point out, breach of a contractual duty gives rise to a breach of contract claim, not a tort. *USF Corp. v. Securitas Sec. Servs. USA Inc.,* 305 Ga. App. 404, 699 S.E.2d 554, 558 (2010). Plaintiff has not alleged in her complaint that Defendants breached any duty imposed by law, as opposed to contract. Accordingly, her negligence claim is **DISMISSED.**

### J. Defamation–Slander–Libel (Count 10)

Plaintiff asserts a claim for slander, libel, or defamation based on the BOA Defendants' communication of false information regarding her payment history to the credit reporting agencies and her mortgage insurer, Radian Guarantee. (Compl. ¶ 153.) Plaintiff fails to state a claim for slander because she has not alleged any oral statement by the BOA Defendants to these third parties. *See* O.C.G.A. § 51–5–4(a) (slander includes "uttering any disparaging words productive of special damage which flows naturally therefrom").

Plaintiff fails to state a claim for defamation based on libel because she has not alleged facts showing that the Bank Defendants made any false written statements to these third parties with malice.

---

11. As discussed above in the HAMP section, Plaintiff has failed to allege a claim that she is an intended third-party beneficiary of a HAMP or servicing contract between Fannie Mae and BAC; thus, any third-party beneficiary claims are **DISMISSED.**

Georgia courts have required a plaintiff to allege facts indicating actual malice in order to recover for libel, meaning that the "allegedly defamatory matter was uttered with knowledge that it was false or reckless disregard for whether it was true or false." *Hammer v. Slater*, 20 F.3d 1137, 1142 (11th Cir.1994). Reckless disregard for the truth or falsity is shown when a defendant "entertained serious doubts as to the truth of his publication," *Id.* (internal citations omitted). Plaintiff Stroman has not set forth facts making it plausible that BOA/BAC employees communicated to Radian or the credit reporting agencies that she was in default on her payments with actual malice. Accordingly, Plaintiffs claims for libel, slander, and defamation are **DISMISSED**.

### K. Unjust Enrichment (Count 11)

Plaintiff Stroman alleges in Count 11 that the BOA Defendants have been unjustly enriched by collecting unlawful late fees, interest, and other charges from her. (Compl. ¶ 156.) "Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Harris Ins. Agency, Inc. v. Tarene Farms, L.L.C.*, 293 Ga.App. 430, 667 S.E.2d 200, 201 (2008) (quoting *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 508 S.E.2d 646, 648 (1998)).

The key elements of an unjust enrichment claim are that: (1) the defendant received an identifiable benefit (2) at no cost to itself. *See generally Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga.App. 124, 553 S.E.2d 662, 670 (2001) ("[U]njust enrichment ... is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received. Inherent in ... unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon him by another and failed to stop the act or to reject the benefit prior to its conferment") (internal quotation marks and citation omitted).

As the Court found above, Plaintiff has pled sufficient facts to establish that there may have been a valid contract between the parties. If a valid contract in fact exists, then Plaintiff cannot succeed on an alternative theory of recovery for unjust enrichment. *See Bogard v. Inter-State Assurance Co.*, 263 Ga.App. 767, 589 S.E.2d 317, 319 (2003) ("the existence of the contract between the parties precludes [plaintiff]s unjust enrichment claim"); *Georgia Tile Distributors, Inc. v. Zumpano*, 205 Ga.App. 487, 422 S.E.2d 906, 908 (1992) (observing that unjust enrichment theory of recovery is available only when there is no valid contract on which plaintiff could base recovery). But, as this matter is before the Court on Defendants' motion to dismiss and as Defendants contest the existence of a valid contract between the parties, the Court finds that Plaintiff has alleged sufficient facts to state a claim for unjust enrichment in the event that the evidence later shows that no valid contract existed between the parties. Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiff's unjust enrichment claim at this time.

### L. Conversion (Count 12)

Plaintiff Stroman alleges in Count 12 that the BOA Defendants "repeatedly converted" her money by holding her monthly mortgage payments in a separate account rather than applying them to her loan balance in order to extract unlawful late fees, interest, and other charges

from her. (Compl. ¶¶ 36, 44, 60–62, 157.) In its prima facie case for damages, the party alleging conversion must "show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit ...." *Taylor v. Powertel, Inc.,* 250 Ga. App. 356, 551 S.E.2d 765, 769 (2001) (internal quotation marks omitted). Where a defendant originally obtained lawful possession of property, the plaintiff must show actual conversion or demand for the property's return coupled with the defendant's refusal to return the property. *Id.* Actual conversion means "any distinct act of dominion and control wrongfully asserted over another's personal property" in denial of or inconsistent with his right of ownership. *Williams v. Nat'l Auto Sales, Inc.,* 287 Ga.App. 283, 651 S.E.2d 194, 196 (2007) (internal quotation marks omitted).

Here, Plaintiff alleges that she made her monthly mortgage payments to the BOA Defendants and that the BOA Defendants then failed to appropriately apply her mortgage payments to the outstanding debt. Once Plaintiff had made her payment to the BOA Defendants, it was no longer under her control but under the BOA Defendants' control. Plaintiff alleges that by holding her payments in a separate account, rather than properly posting them in satisfaction of the amounts contractually due, the BOA Defendants wrongfully asserted dominion over the funds.[12] Under these facts, Plaintiff has sufficiently alleged actual conversion. *See James v. Litton Loan Servicing, LP,* No. 4:09–CV–147, 2011 WL 59737, at *12 (M.D.Ga. Jan. 4, 2011) (denying summary judgment on conversion claim where plaintiffs presented

evidence that servicer intentionally delayed applying payments to account in order to charge interest and late fees); *Johnson v. Citimortgage, Inc.,* 351 F.Supp.2d 1368, 1372 (N.D.Ga.2004) (finding that plaintiff had stated a conversion claim under Georgia law where plaintiff alleged that loan servicer failed to properly apply loan payment to plaintiff's outstanding loan); *Herston v. Locke,* 160 Ga.App. 120, 286 S.E.2d 349, 350 (1981) (finding that the defendant selling the property at issue in the conversion claim satisfied the "actual conversion" requirement). The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's conversion claim.

### M. Theft by Conversion & Theft by Deception (Counts 13 & 14)

■ Plaintiff asserts in Count 13 that the BOA Defendants committed Theft by Conversion by "unlawfully and or fraudulently soliciting, obtaining and or [sic] exercising control over Plaintiff's property, pecuniary interests and or benefits/entitlements to payment(s)/reimbursement(s) and or failing to make a specified and lawful application/disposition of her funds by virtue of the facts and matters described herein." (Compl. ¶ 158.) Similarly, Count 14 alleges that the BOA Defendants committed Theft by Deception by "obtaining/obstructing access to Plaintiff's property or pecuniary interests in a deceitful means/manner with the intention of depriving her of same and or [sic] intentionally and deceptively promised the performance of services which they did not intend to perform or knew at the time would not be performed." (Compl. ¶ 159.) Plaintiff claims that the BOA Defendants are liable

---

12. Defendants assert in their reply brief that because Defendants properly applied Plaintiff's payments in December 2010, Plaintiff's claim for conversion cannot succeed. (Reply at 11.) However, the November 9, 2010, letter from BOA (Compl. Ex. G) simply conveys an *expectation* that the account will be corrected in December 2010, and Plaintiff alleges in her complaint that as of December 15, 2010, certain payments still have not been accounted for.

for violating O.C.G.A. §§ 16–8–2, 16–8–3, and 16–8–4, which are criminal statutes prohibiting theft by taking, theft by conversion, and theft by deception.[13]

Defendants seek to dismiss Plaintiff's claims on the grounds that they are improperly asserted in a civil lawsuit. Plaintiff fails to offer in her response any argument or authority in support of her claims under these criminal statutes. Instead, Plaintiff merely incorporates her argument in support of her tort claim for conversion in Count 12.

■■■ Under Georgia law, "the violation of a criminal statute 'does not automatically give rise to a civil cause of action.' Instead, where a criminal statute evidences no intent to create a private cause of action, civil liability 'must be determined under the applicable provisions of [state] tort law,' if any." *E.g., Am. Gen. Life & Acc. Ins. Co. v. Ward,* 509 F.Supp.2d 1324, 1330 (N.D.Ga.2007) (citing *Oswald v. Am. Nat'l Can Co.,* 194 Ga.App. 882, 392 S.E.2d 26, 27 (1990) and *Rolleston v. Huie,* 198 Ga.App. 49, 400 S.E.2d 349, 351 (1990)); *Georgia ex rel. Saunders v. Mortg. Electronic Registration Sys., Inc.,* 2011 WL 1335824, *10 (N.D.Ga., Mar. 11, 2011) (finding O.C.G.A. §§ 16–8–2 and 16–8–3 are criminal statutes that do not provide for any private cause of action and dismissing claims under these statutes) (citing *Oswald v. Am. Nat'l Can Co.,* 194 Ga.App. 882, 392 S.E.2d 26, 27 (1990)). O.C.G.A. §§ 16–8–2, 16–8–3 and 16–8–4 do

not purport to create a private cause of action for theft by conversion or theft by deception. *Am. Gen. Life & Acc. Ins. Co.,* 509 F.Supp.2d at 1330; *Georgia ex rel. Saunders,* 2011 WL 1335824, at *10. Therefore, Plaintiff's claims in Counts 13 and 14 fail as a matter of law. Accordingly, the BOA Defendants' motion to dismiss Plaintiff's claims in Counts 13 and 14 based on these criminal statutes is **GRANTED.**

### N. Unfair and Deceptive Practices (Count 15)

■■■ Defendants contend that Plaintiff has simply parroted the language of the statutes and has not made factual allegations showing how Defendants violated the Fair Business Practices Act, the Deceptive Trade Practices Act, or the false advertising statute she references. (Br. Supp. Mot. Dismiss at 42–44.) Plaintiff responds that her complaint as a whole shows how Defendants violated these statutes. (Resp. at 48.) Plaintiff alleges that the BOA Defendants failed to properly credit her account for the payments she made pursuant to a binding modification agreement, ignored her repeated requests to fix the problem over a span of nine months, sent her harassing collection letters, wrongfully threatened foreclosure, and improperly reported to the credit bureaus that she was in default on her loan. This conduct could be described as unfair and deceptive,

---

**13.** Plaintiff also cites O.C.G.A §§ 44–12–20 and 51–10–1 in support of her claim for Theft by Conversion. (Compl. ¶ 158.) However, these statutes are inapplicable to Plaintiff's claim in Count 13. O.C.G.A. § 44–12–20 states that "[a] chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." Under Georgia law, chooses in action include all rights of action sounding in contract or tort. *Prodigy Centers/Atlanta No. 1 L.P. v. T–C Asso-*

*ciates, Ltd.,* 127 F.3d 1021, 1023 (11th Cir. 1997). O.C.G.A. § 51–10–1 provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." This statute embodies the common law action of trover and conversion. *Washington v. Harrison,* 299 Ga.App. 335, 682 S.E.2d 679, 682 (2009), *cert. denied.* Accordingly, Plaintiff is limited to her claim for tortious conversion set forth in Count 12.

BOA Defendants argue that the FBPA does not apply to residential mortgage transactions. (Br. Supp. Mot. Dismiss at 43.) This appears to be an overly broad interpretation of the statute's exemption of "[a]ctions or transactions *specifically authorized* under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." O.C.G.A. § 10–1–396(1) (emphasis added); *see Kitchen v. Ameriquest Mortgage Co.*, No. 1:04–CV–2750–BBM, 2005 U.S. Dist LEXIS 43937 (N.D.Ga. Apr.29, 2005) (Martin, J.) (holding that there is no blanket exemption from the FBPA for mortgage lenders; rather, the specific conduct under challenge must be regulated by another statute to trigger the exemption). BOA Defendants have not argued and this Court does not find that any of the unfair and deceptive conduct of which Plaintiff complains was specifically authorized under another statute. Rather, Plaintiff describes unfair and deceptive conduct that could harm the general consuming public and that was not condoned by any statutory or regulatory framework. *See id.* at *26–27.

Accordingly, the Court **DENIES** the Bank Defendants' motion to dismiss Plaintiff's claims under the Fair Business Practices Act. Plaintiff has not alleged facts showing a violation of the Deceptive Trade Practices Act or false advertising, thus these claims are **DISMISSED**.

### O. Fraud (Count 16)

Defendants assert that Plaintiff has failed to plead the elements of her fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b). Under Rule 9(b), Plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir.2007).

Generally, fraud under Georgia law must relate to existing facts or past acts, not to future acts or promises. However, "[w]hile fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the future event will not take place." *Hayes v. Hallmark Apartments, Inc.*, 232 Ga. 307, 207 S.E.2d 197, 199 (1974) (citations omitted); *see also Perimeter Realty v. GAPI, Inc.*, 243 Ga.App. 584, 533 S.E.2d 136, 147 (2000) (recognizing that false promise made to induce one to enter into a contract is an exception to the rule that fraud cannot be premised on future promises).

Plaintiff's fraud claim is pled in an entirely conclusory manner, with no specific reference to any affirmative misrepresentations. Plaintiff alleges that Defendants committed fraud by omitting any explanation of the way they intended to process her payments under the modification or the fact that they would report derogatory information to the credit bureaus. (Compl. ¶ 165.) Further, Plaintiff has not alleged (other than in a conclusory manner) that she relied on these omissions or that Defendants made the omissions with the intent to deceive her.

Plaintiff has not alleged particularized facts supporting an inference of scienter on the part of the BOA Defendants. To do so, she would have to allege facts showing that Defendants knew when they discussed the modification with her that her payments would be improperly applied and her credit would be decimated, and deliberately withheld that information in order to induce Plaintiff to accept the modification. Plaintiff also has not alleged facts showing that this omission was material— that she would not have accepted the loan

modification had she known this information.[14] Thus, Plaintiff has not pled a viable fraud claim under Rule 9(b). *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir.2010) (noting that under the heightened pleading standard for fraud imposed by Fed.R.Civ.P. 9(b), a plaintiff must allege the precise statements or misrepresentations made and the manner in which these statements misled the plaintiff). Accordingly, her fraud claim is **DISMISSED.**

### P. Emotional Distress (Count 17)

 Plaintiff has failed to allege facts supporting a claim for intentional infliction of emotional distress under Georgia law, because she has not alleged the kind of "extreme and outrageous" conduct that goes "beyond all possible bounds of decency" and would be "utterly intolerable in a civilized community." *Canziani v. Visiting Nurse Health Sys., Inc.*, 271 Ga.App. 677, 610 S.E.2d 660, 662 (2005). Therefore, Plaintiff's claim for intentional infliction of emotional distress it is **DISMISSED.**[15]

### Q. Civil RICO (Count 18)

Plaintiff asserts a claim under Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16–14–1 et seq. However, Plaintiff fails to plead with the required specificity any predicate act, much less at least two related predicate acts under the statute. *See Am. Den-*

*tal Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir.2010) (holding that RICO violations based on fraud must be pled according to the heightened pleading standard of Rule 9(b)). Therefore, Plaintiff's Civil RICO claim is **DISMISSED.**

### R. Remaining Claims (Count 19–26)

Plaintiff's claims for "general liability" and "miscellaneous relief" (Counts 19 and 21) do not state independently cognizable claims upon which relief may be granted, and are **DISMISSED.**

Defendants contend that the wrongdoing alleged in the complaint has ceased, and therefore Plaintiff's claims for declaratory and injunctive relief fail. However, at this stage, the Court is bound to accept all facts pled in the complaint as true, and the complaint alleges that Defendants' failure to properly credit payments under the loan modification and false credit reporting continue. Accordingly, Defendants' motion to dismiss Plaintiff's claims for injunctive and declaratory relief (Counts 22 and 23) is **DENIED.**

As discussed *supra* in Section B, Plaintiff has not pled facts showing that she is an intended third-party beneficiary of a contract between Fannie Mae and the BOA Defendants. Plaintiff's claim for agency liability (Count 20) is therefore **DISMISSED.**

Plaintiff's claims for damages, attorney's fees & costs, and interest are all remedies

---

14. In the absence of particularized facts showing that Plaintiff would not have accepted the loan modification had she known the impact it would have on her credit, the Court would not presume that a borrower would decline a modification that deferred over $50,000 in principal and reduced her interest rate to 3%.

15. The Court's dismissal of this count is without prejudice to Plaintiff's right to pursue emotional distress damages on any claim that authorizes such damages. Georgia law al-

lows for pain and suffering damages where the plaintiff suffers a physical injury *or pecuniary* loss. *Wells by Maihafer v. Ortho Pharm. Corp.*, 615 F.Supp. 262, 297 (N.D.Ga.1985) (citing *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 216 S.E.2d 776 (1975)), *modified in part on other grounds*, 788 F.2d 741 (11th Cir.1986). Moreover, Plaintiff may be able to recover emotional distress damages under the FCRA. *See King v. Asset Acceptance, LLC*, 452 F.Supp.2d 1272, 1280 (N.D.Ga.2006) (citing *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124 (11th Cir.2006)).

as opposed to independent causes of action. To the extent Plaintiff intended to assert these counts as freestanding claims, Counts 24, 25, and 26 are **DISMISSED.**

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss [Doc. 24]. The Court **DISMISSES** Plaintiff's claims for violation of HAMP (Count 2), violation of the FCBA (Count 3), violation of the FDCPA (Count 5), negligence (Count 9), libel-slander-defamation (Count 10), theft by conversion (Count 13), theft by deception (Count 14), deceptive trade practices and false advertising (Count 15), fraud (Count 16), emotional distress (Count 17), civil RICO (Count 18), general liability (Count 19), agency (Count 20), miscellaneous relief (Count 21), damages (Count 24), attorney's fees and costs (Count 25), and interest (count 26).

The Court **DENIES** the Bank Defendants' motion to dismiss Plaintiff's claims for violation of RESPA (Count 1), violation of the FCRA (Count 4), violation of GFLA (Count 6), breach of contract (Count 7), breach of the implied duty of good faith and fair dealing (Count 8), unjust enrichment (Count 11), conversion (Count 12), violation of the FBPA (Count 15), injunctive relief (Count 22), and declaratory judgment (Count 23).[16]

---

**16.** The Court **DENIES** Plaintiff's Motion to Ensure Review of Plaintiff's Objections to Final Report and Recommendation of Magistrate Judge [Doc. 54]. As the R & R was withdrawn, Plaintiff's objection thereto is moot. Further, Plaintiff's counsel had an adequate opportunity to brief the issues addressed in Defendants' motion in Plaintiff's 58–page response brief.