A98A0966. DAVIS et al. v. FIRST HEALTHCARE CORPORATION.
(507 SE2d 563)

RUFFIN, Judge.

Raymond Davis, Sr., individually, and Raymond Davis, Jr., as administrator of the Estate of Elsie T. Davis, sued First Healthcare Corporation d/b/a Savannah Convalescent Center ("Savannah Convalescent Center"), a nursing home, for wrongful death and negligence as a result of Elsie Davis falling out of bed while under its care. Savannah Convalescent Center moved for summary judgment, asserting there was no evidence of ordinary negligence to support the claims against it. The trial court granted summary judgment to Savannah Convalescent Center, and the Davises appeal. We reverse.

In their complaint, the Davises allege that on or about January 13, 1994, Elsie T. Davis was found on the floor of her room by another resident at the nursing home. They assert that "Ms. Davis had apparently fallen out of her bed due to not being properly restrained by the staff at Defendant's nursing home as required by Dr. Schwartz." The nursing home's failure to properly restrain Ms. Davis is the only specific allegation of negligence in the complaint.

Savannah Convalescent Center moved to dismiss the complaint based on plaintiffs' failure to attach an OCGA § 9-11-9.1 affidavit. The trial court denied this motion, finding that the nursing home's alleged failure "to carry out the instructions of the decedent's physician . . . does not involve the exercise of professional judgment, but presents a cause of action of simple negligence." Savannah Convalescent Center subsequently moved for summary judgment. The trial court granted this motion because it found "there was no specific order to restrain Mrs. Davis while in bed on January 13, 1994 when she fell out of bed." The Davises have appealed from the trial court's order granting summary judgment on their claims of simple negligence.

" 'To prevail at [a motion for] summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genu-

ine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.' (Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review is de novo. *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995)." *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

Viewed in this light, the record shows Elsie Davis entered Savannah Convalescent Center around November 24, 1993, to recuperate from a fall which fractured her hip. She also suffered from Alzheimer's-type dementia. Dr. Phillip Schwartz, the medical director for the nursing home, testified in his deposition that at the time of her admission, Ms. Davis had an ongoing problem with her balance and "had apparently fallen before, even before her fractured hip."

At the time of her admission to the nursing home, another physician, Dr. Clary, ordered the nurses to restrain Ms. Davis with a "Posey vest PRN." On November 30, 1993, Dr. Schwartz changed this order after examining Ms. Davis because he believed Dr. Clary's restraint order was too nebulous and lacked specificity. Dr. Schwartz testified that "[h]istorically, vest restraints . . . have caused more deaths than good in nursing homes. . . . [P]eople get hung up on those vest restraints and get strangled." Dr. Schwartz's written order required the nurses to "D/C [discontinue] vest restraint" and to "Try the least restrictive restraint first and evaluate patient."

On December 8, 1993, Dr. Schwartz issued the following written order: "Safety Device ordered: velcro grip restraint while OOB [out of bed] to prevent injury." Dr. Schwartz testified this order was in effect on January 13, 1994, the day Ms. Davis was found on the floor beside her bed. According to Dr. Schwartz, however, there was no specific order for Ms. Davis to be restrained while in bed on that date. Dr. Schwartz also testified that the nursing home staff did not violate any of his orders by failing to restrain Ms. Davis while she was in her bed on January 13, 1994.

Raymond Davis, Jr. testified that he visited the nursing home after his mother's injury and asked a woman sitting at the nurse's station about his mother. The woman told Davis that his mother was found on the floor by her bed that morning. Davis advised the woman that "it's in Dr. Schwartz's orders somewhere that she should be restrained," and asked how his mother could "have been gotten out of the bed if she had been restrained." According to Davis, this woman replied, "well, I don't know" and looked through his mother's chart.

After looking through the chart she told him, "oh, here it is, here it is, where Dr. Schwartz left the order that she should be restrained when in the wheelchair with a strap or in the bed." Davis acknowledged that he did not know the date of this alleged order.

The Davises attached a document titled "Medication Record" as Exhibit "A" to their brief in opposition to defendant's summary judgment motion. This document was not certified, and there is no sworn testimony in the record about the origin or creation of this document. It is undisputed, however, that this document was produced by Savannah Convalescent Center in response to a request for production of documents from the Davises.

The medication record lists the patient's name as "Davis, Elsie," the physician as "Schwartz, Phillip," and the facility as "Savannah Convalescent Center." This pre-printed form includes separate boxes for various orders, days of the week, and the hour. One box states "Charting from 2/01/94 thru 2/28/94." Another box states "Order Date: 12/8/93 safety device ordered: velcro grip restraint while OOB in W/C & vest restraint while in bed at night time to prevent pt. injury." The trial court held that although this document could create a triable issue of fact, it was unauthenticated and therefore could not be considered when evaluating the motion for summary judgment.

1. We must first determine whether the medication record can properly be considered when evaluating Savannah Convalescent Center's summary judgment motion. "A proper foundation must be laid for the introduction of documentary evidence." (Citations and punctuation omitted.) *Hill Aircraft &c. Corp. v. Cintas Corp.*, 169 Ga. App. 747, 748 (1) (315 SE2d 263) (1984) (physical precedent only). "As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. [Cit.] There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness. [Cits.] Our rules of evidence provide a wide variety of means by which a party may authenticate a writing." *Martin v. State*, 135 Ga. App. 4, 6-7 (3) (217 SE2d 312) (1975). The use of circumstantial evidence is one of these methods. See *Gunter v. State*, 243 Ga. 651, 657 (4) (256 SE2d 341) (1979) ("The genuineness of the writing . . . may be proved by circumstantial evidence."). See also McCormick on Evidence, Vol. 2, § 222, p. 44 (4th ed. 1992) ("it is clear that authentication by circumstantial evidence is uniformly recognized as permissible").

The Davises assert the medication record is properly authenticated because it was produced for them in response to a request for

production of documents by Savannah Convalescent Center.[1] This is an issue of first impression in Georgia. Federal courts faced with this issue typically find production of a document by a party, along with other circumstantial evidence, is prima facie proof of authentication, particularly when the party who produced the document never claims it is not authentic or genuine. See, e.g., *McQueeney v. Wilmington Trust Co.*, 779 F2d 916, 929 (3rd Cir. 1985); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F3d 558, 562 (5th Cir. 1998); *Snyder v. Whittaker Corp.*, 839 F2d 1085, 1089 (5th Cir. 1988); *Denison v. Swaco Geolograph Co.*, 941 F2d 1416, 1423 (10th Cir. 1991); *Fed. Trade Comm. v. Hughes*, 710 FSupp. 1520, 1522 (N.D. Tex. 1989).

In an analogous line of cases, Georgia courts hold that while possession, standing alone, cannot authenticate a document, possession, together with other circumstances, may be used to authenticate a document. See *State v. Smith*, 246 Ga. 129, 130 (269 SE2d 21) (1980); *Hull v. State*, 265 Ga. 757, 760-761 (6) (462 SE2d 596) (1995), overruled on other grounds, *Woods v. State*, 269 Ga. 60, 63 (3) (495 SE2d 282) (1998); *Martin v. State*, supra at 8. The content and appearance of a document are two of the "other circumstances" considered with possession when our courts analyze whether there is sufficient circumstantial evidence of authentication.[2] Id.

In this case, the nursing home admits it produced the medication record for the Davises and does not contend it is not an authentic or genuine record of the nursing home.[3] The nursing home's written response to the Davises' request for production of documents states that "[t]he medication sheets on Mrs. Davis during her stay at the Defendant's facility are attached." Furthermore, the entries on the document also support a finding that the document is genuine. It lists the patient as Elsie Davis, the facility as Savannah Convalescent Center and the physician as Dr. Schwartz. Dr. Schwartz testified that he was Elsie Davis' treating physician while she resided in the nursing home. The record also lists the medication Darvocet, and Dr. Schwartz testified that this was a medication prescribed for Ms. Davis while she was in the nursing home. "0112A" is typed in the "Room/Bed" box of the medication record. A nurse employed by

---

[1] The Davises did not properly establish production of this document by Savannah Convalescent Center through an affidavit or the filing of original discovery under OCGA § 9-11-29.1. We will, however, consider this issue because Savannah Convalescent Center admitted in its briefs that it did indeed produce this document for the Davises.

[2] As with possession, a document cannot be authenticated solely by evidence of its contents and appearance. See *Smith v. Hatgimisios*, 233 Ga. 354, 357 (211 SE2d 306) (1974); *Freeman v. Brewster*, 93 Ga. 648, 653 (6) (21 SE 165) (1894); *Gamarra v. State*, 142 Ga. App. 196, 198-199 (4) (235 SE2d 652) (1977).

[3] The nursing home's authentication objection to consideration of the medication record is framed in terms of the Davises' failure to meet their burden of showing authentication.

Savannah Convalescent Center at the time Ms. Davis resided in the nursing home, Leola McCound, testified that Ms. Davis was moved to room 112-A on January 14, 1994. As the document states "Charting from: 02/01/94 thru: 02/28/94," the "room/bed" information in the document is consistent with McCound's testimony. Based on the facts and circumstances of this case and the authority outlined above, we find sufficient circumstantial evidence to establish the authenticity of the medication record. As this record is admissible as a party admission under OCGA § 24-3-31, we will consider it in our de novo analysis of whether the trial court properly granted summary judgment to the nursing home.

2. We find the medication record creates a genuine issue of material fact as to whether the nursing home staff was ordered to restrain Ms. Davis while she was in bed on January 13, 1994, and whether they were negligent in failing to do so. We reject the nursing home's argument that the order reflected in the medication record does not contradict Dr. Schwartz's testimony that there was no order to restrain Ms. Davis while she was in bed on January 13, 1994. Although the order date in the medication record is December 8, 1993, this record also states "Charting from: 02/01/94 thru: 02/28/94," and it appears from initials in columns next to the restraint order that this order was carried out in the first three days of February. Thus, an inference can be drawn that the December 8, 1993 order to restrain in bed existed continuously from that date through February 1994. As there is a genuine issue to be tried, the trial court erred when it granted summary judgment to the nursing home.[4]

*Judgment reversed. Pope, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 16, 1998 — 

*Calhoun, Sapp & Calhoun, John R. Calhoun, Kenneth A. Calhoun,* for appellants.
*Brennan & Wasden, Joseph P. Brennan,* for appellee.

---

[4] Since we have found the medication record creates a genuine issue of material fact, it is not necessary for us to determine whether Raymond Davis, Jr.'s testimony about the statements of the unidentified nurse also creates a genuine issue to be tried.