A00A1973. SALINAS v. SKELTON et al.
(547 SE2d 289)

RUFFIN, Judge.

Fair Side Lofts, LLC (Fair Side) was formed in 1994 for the purpose of converting an old warehouse into residential condominium units. Richard Skelton was Fair Side's managing member, and Ronald Creel was Fair Side's only other member. The company that financed the conversion required Skelton and Creel to individually purchase a certain number of condominium units as a condition for loan approval. One of those units was unit 13. Cynthia Salinas pur-

---

[8] *Allen v. State*, 272 Ga. 513, 517 (530 SE2d 186) (2000).

chased unit 13 from Skelton and Creel. After partially knocking out one of the walls in her unit to reveal an old boiler, Salinas discovered that the boiler was insulated with asbestos. Salinas sued Skelton, Creel, Fair Side, and their real estate agent, alleging that they knew of the asbestos, yet failed to disclose this knowledge to her. Salinas alleged causes of action against Skelton, Creel, and Fair Side for breach of contract, fraud, intentional infliction of emotional distress, and punitive damages. Salinas alleged causes of action against the real estate agent, John A. Silliman, and ReMax North Atlanta, Inc. (ReMax) for negligent misrepresentation, intentional infliction of emotional distress, and punitive damages. The trial court granted summary judgment to all the defendants, and Salinas appealed.[1] For reasons which follow, we affirm in part and reverse in part.

On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in the light most favorable to the nonmoving party, demonstrates any genuine issue of material fact.[2] Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[3]

Viewed in a light most favorable to Salinas, the evidence in this case shows that the converted warehouse contained an old boiler. Skelton stated in an affidavit that he "was aware that asbestos was a common insulating material in old buildings and knew that there was a possibility that the boiler might be insulated with asbestos." Skelton further stated that "[r]ather than testing the boiler for the presence of asbestos, the boiler was slightly moved diagonally into its present position and encapsulated in two layers of sheet rock [sic]. Encapsulation of asbestos is a common method of dealing with asbestos."

Floor plans of unit 13 reveal that the boiler is housed in an alcove of masonry walls located on the basement floor of the unit. Fair Side apparently enclosed the alcove with a fourth wall constructed of Sheetrock. Although Fair Side asserts that the enclosed area is not part of unit 13, the floor plans do not clearly define the unit boundaries as such. On one plan, the enclosed area is crosshatched, and the architect who prepared the plan stated in an affidavit that the cross-hatched space was not included as part of the unit. On another plan, however, the enclosed area is not cross-hatched.

In February 1997, Salinas looked at unit 13 with an interest in

---

[1] Although the trial court's orders reveal that the court granted summary judgment to the defendants on Salinas's claim for intentional infliction of emotional distress, she has not contested this portion of the court's order on appeal.

[2] See OCGA § 9-11-56 (c); *Leal v. Hobbs*, 245 Ga. App. 443 (538 SE2d 89) (2000).

[3] See id.; see also *Paden v. Murray*, 240 Ga. App. 487 (523 SE2d 75) (1999).

purchasing it. The seller's agent, Silliman of ReMax, informed her about the enclosed boiler, told her that the enclosed area was part of the unit, and suggested that she could remove the wall to take advantage of the extra space.

Salinas decided to purchase the unit and entered into a purchase agreement. In connection with the purchase, Skelton completed a Seller's Property Disclosure Statement (Disclosure Statement). The Disclosure Statement defines "the Property" as unit 13 and asks the seller numerous questions about the physical condition of "the Property." The statement required the seller to respond to all questions by checking either "Yes," "No," or "Don't Know." Under a section titled "TOXIC SUBSTANCES," the Disclosure Statement asks: "Are you aware of any underground tanks or toxic substances on the Property . . . such as asbestos . . . ?" Skelton failed to answer this question, but in another section of the Disclosure Statement designated for additional explanations, he wrote: "Behind sheet rock [sic] walls in basement area are walls which most likely contain lead based paint. The original boiler for the building is also behind these walls."

After entering the purchase agreement, which contained a merger clause, Salinas frequently visited the condominium to check for water leaks and to meet the residents. However, Salinas did not hire a building inspector to examine the property because she understood that "new homes do not require an inspection."

Upon closing the sale, Salinas decided to expand her living space into the enclosed area occupied by the boiler. Thus, Salinas took a hammer, punched a big hole in the wall, and went inside the enclosure to look at the boiler. When Salinas asked a contractor for an estimate on removing the boiler and expanding the space, he informed her that the area contained asbestos. Salinas then read the Disclosure Statement for the first time and realized that the sellers had failed to answer the question concerning the presence of asbestos on the property.

Salinas subsequently filed this action. In her complaint, Salinas alleged that Skelton and Creel breached the purchase agreement, which "incorporated by reference [the] Seller's Property Disclosure Statement," by failing to disclose "their knowledge or belief that the property contained asbestos." During discovery, Skelton produced a letter, dated October 5, 1994, which was purportedly written to him by the project manager for the construction company performing the condominium conversion (Notification Letter). The Notification Letter states in part: "Located at the above referenced project we . . . have encountered two areas containing hazardous materials. . . . At unit #13 basement (a/k/a boiler room) the existing boiler and some pipe lines are covered in asbestos." The Notification Letter indicates that it was carbon copied to Creel.

When Skelton, Creel, and Fair Side moved for summary judgment, they asserted, among other arguments, that they did not know of the asbestos. Skelton stated in an affidavit: "Because I never tested for the presence of asbestos, I never had knowledge that there was asbestos around the boiler." Similarly, Creel stated in an affidavit that he "had no knowledge as to whether the boiler contained asbestos." In response, Salinas proffered the Notification Letter produced by Skelton in discovery, but did not take further steps to authenticate the letter.

After Silliman and ReMax also moved for summary judgment, the trial court granted summary judgment to all five defendants. Regarding Skelton, Creel, and Fair Side, the court found that Salinas's claims founded on misrepresentations made outside the contract were barred by the merger clause in the purchase agreement. The court further ruled, "given that all parties agree that the disclosure statement was incorporated into the contract," claims based on misrepresentations in the statement survived. Thus, Salinas's remaining claims, the court found, "stand and fall on whether Defendants knew that the boiler contained asbestos." The court concluded that even if the Notification Letter

> has been authenticated, the statements on which Plaintiff rely are inadmissible hearsay. . . . On the evidence before the Court, Plaintiff was on notice that an old boiler was behind the wall and had the obligation to discover, using due diligence, what that meant to her plans to expand and to her health.

In granting summary judgment to Silliman and ReMax, the court essentially echoed this reasoning, finding that Salinas's misrepresentation claims are barred by the merger clause and that her other claims are unsupported by the evidence because she failed to exercise due diligence to discover the asbestos.

1. Initially, we must determine whether the trial court properly excluded the Notification Letter from evidence. In *Davis v. First Healthcare Corp.*,[4] we ruled that a document can be authenticated by circumstantial evidence. One such circumstance, when coupled with other evidence, is a party's production of the document during discovery.[5] The appearance and content of a document may also be circum-

---

[4] 234 Ga. App. 744, 746-747 (1) (507 SE2d 563) (1998).
[5] See id. at 747; see also *John Paul Mitchell Systems v. Quality King Distrib.*, 106 FSupp.2d 462, 472 (S.D. N.Y. 2000) (citing *United States v. Brown*, 688 F2d 1112, 1116 (7th Cir. 1982), for proposition that just as a defendant can identify documents by oral testimony, his act of production is implicit authentication).

stantial evidence of authentication.[6]

In this case, Skelton admits that he produced the Notification Letter during discovery, and neither Skelton nor Creel contends that they did not receive the letter from the construction project manager. In addition, the letter refers to the warehouse conversion project and the existing boiler in unit 13's basement area. It is undisputed that the basement area of unit 13 of the Fair Side condominium conversion project contained a boiler. The letter further states that the boiler and some pipes are covered in asbestos, and test results presented by Salinas confirm that the boiler and some of the pipes are covered with asbestos. Finally, the letter refers to the Rowhouse Design Group as the architects who drew the plans, and the plans were undisputably prepared by that entity. Under these circumstances, we conclude that the letter was sufficiently authenticated.[7]

We further conclude that the statement in the letter informing Skelton and Creel of the asbestos was not hearsay. This is because "[a]s a fundamental rule, the definition of hearsay does not include out-of-court statements which are not offered as proof of the facts asserted in such statement, but are offered merely as proof that such a statement was made."[8] In this case, the issue is not whether the letter's author was telling the truth when he informed Skelton and Creel about the presence of asbestos, but whether the author's statement provided those defendants with knowledge that there was asbestos on the boiler.[9] Thus, although the letter was inadmissible to prove that there actually was asbestos on the boiler, it was admissible evidence of both Skelton's and Creel's knowledge of the toxic substance.[10]

2. If a seller of real estate knows of a defect in the property of which the purchaser is ignorant, and which would likely influence the purchase decision, the seller has a duty to disclose his knowledge to the purchaser.[11] Where a buyer seeks to recover from a seller who has passively concealed a defect,

> the buyer must prove that the vendor's concealment of the defect was an act of fraud and deceit, including evidence that the defect could not have been discovered by the buyer

---

[6] See *Davis*, supra at 747.
[7] See id.
[8] (Punctuation omitted.) *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 466 (3) (469 SE2d 763) (1996) (quoting Green, Ga. Law of Evidence (4th ed.), Hearsay, § 218).
[9] See id.
[10] See id.
[11] See *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 557 (1) (497 SE2d 54) (1998).

by the exercise of due diligence and that the seller [or agent] was aware of the problems and did not disclose them.[12]

In this case, there is evidence that the sellers were aware of the asbestos. As we concluded in Division 1, the Notification Letter is admissible evidence, probative of the sellers' knowledge of the asbestos.

In addition, there is evidence that Salinas could not have discovered the asbestos by the exercise of due diligence. The evidence shows that the boiler was completely hidden behind a wall. Although the appellees place great emphasis on the fact that Salinas failed to hire a professional building inspector, they have not established that an inspector would have broken through the wall to test the boiler insulation for asbestos. Likewise, the fact that Salinas failed to read the Disclosure Statement until after she learned of the asbestos is without consequence. Although the Disclosure Statement provided Salinas with constructive notice that the "original boiler for the building" was behind the basement wall on her property,[13] we cannot say as matter of law that further inquiry would have informed her that the boiler was insulated with asbestos. We are aware of no authority or evidence which places real estate purchasers on inquiry notice that a boiler may contain asbestos.[14]

Accordingly, the trial court erred in finding, as a matter of law, that the sellers lacked notice of the asbestos and that the purchaser failed to exercise due diligence in discovering the substance. Because the evidence of record creates a genuine issue of material fact concerning these issues, the trial court erred in granting summary judgment to Skelton, Creel, and Fair Side.[15]

3. Skelton argues that even if the trial court erred in granting summary judgment on the stated grounds, the judgment must still be affirmed under the "right for any reason" rule.[16] In this regard, he claims that the trial court's grant of summary judgment on Salinas's breach of contract claim should be affirmed because the evidence

---

[12] (Punctuation omitted.) *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 76 (441 SE2d 421) (1994) (quoting *U-Haul Co. &c. v. Dillard Paper Co.*, 169 Ga. App. 280, 282 (312 SE2d 618) (1983)).

[13] See *Smalls*, supra at 558 (ruling that " '[i]gnorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of the parties' ").

[14] See id. (stating that " '[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led' ").

[15] Salinas has not challenged the trial court's ruling that the merger clause precludes any claims she may have regarding misrepresentations made outside the purchase agreement.

[16] See, e.g., *Gilliam v. Fletcher Bright Co.*, 244 Ga. App. 315, 317 (2) (535 SE2d 325) (2000) (holding that "[a] grant of summary judgment that is right for any reason must be affirmed").

shows that Fair Side was the seller under the purchase agreement. Although Skelton is correct that Fair Side is identified as the seller in the purchase agreement, the evidence also shows that the Disclosure Statement was signed by Skelton, as the "seller," in his individual capacity. Moreover, it is undisputed that Skelton and Creel were the true owners of unit 13 and that they were the individuals who actually sold the unit to Salinas under the agreement. Thus, to the extent that the evidence identifying the seller is conflicting, such defect was cured by Skelton's and Creel's performance under the agreement.[17]

Skelton also argues that he is entitled to summary judgment because the undisputed evidence shows that the boiler area was not part of unit 13. This assertion ignores evidence that one of the floor plans of the unit did not contain cross-hatching over the boiler area and evidence that Skelton inferentially identified the boiler area as part of unit 13 in the Disclosure Statement when he stated that "the Property," (unit 13), contained the boiler. Finally, Silliman, the seller's agent, stated in his deposition that he understood that unit 13 contained the boiler area. Thus, it remains for the jury to determine whether unit 13 included the boiler area.

The remainder of Skelton's arguments are also without merit. Viewing the evidence in a light most favorable to Salinas, a jury could infer that Skelton intentionally failed to disclose the asbestos on the Disclosure Statement, which specifically asked about the presence of the toxic substance.[18] Furthermore, inasmuch as the Disclosure Statement expressly provided that the purchaser was relying on the representations in the statement, a jury could infer that the sellers knew Salinas was acting under the misapprehension that the condominium unit did not contain asbestos.

4. Finally, Salinas argues that the trial court erred in granting summary judgment to Silliman and ReMax because evidence shows that Silliman failed to disclose the asbestos. We disagree. Without belaboring the point, Salinas does not dispute that she is bound by the merger clause in the purchase agreement,[19] and there is no evidence that Silliman made any misrepresentations outside the agreement.[20] The Disclosure Statement, by its express terms, was clearly limited to representations made by the seller. Accordingly, the trial court correctly granted summary judgment to Silliman on Salinas's

---

[17] See *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 795 (1) (432 SE2d 238) (1993); *Self v. Smith*, 98 Ga. App. 876, 882 (107 SE2d 721) (1959).

[18] See *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 596 (10) (533 SE2d 136) (2000) (ruling that "[s]cienter is seldom susceptible of direct proof, and recourse to circumstantial evidence usually is required").

[19] The trial court made this finding in its order, and Salinas has not appealed that finding.

[20] See *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893-894 (537 SE2d 138) (2000).

claims against him.[21] Likewise, we find no error in the trial court's grant of summary judgment to ReMax, whose liability was predicated solely on Silliman's alleged wrongdoing.

5. It is clear that, because the trial court found summary judgment was merited on Salinas's contract, fraud, and intentional infliction of emotional distress claims against Skelton, Creel, and Fair Side, the court did not consider these defendants' motions for summary judgment on Salinas's claim for punitive damages. Accordingly, on remand, the court is directed to consider and rule 'upon this motion.

*Judgment affirmed in part, reversed in part, and remanded with direction. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 13, 2001 —
RECONSIDERATION DISMISSED APRIL 13, 2001 ▮▮▮▮▮▮

*Sylvia R. Jones*, for appellant.
*Long, Aldridge & Norman, Bruce P. Brown, Gregory S. Brow, Cruser & Mitchell, Joseph R. Cruser, Jennifer M. McBath, Rowen & Klonoski, Sharon L. Rowen*, for appellees.