**SECOND DIVISION**
**BARNES, P. J.,**
**PHIPPS, P. J., and ADAMS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 5, 2012**

# In the Court of Appeals of Georgia

A12A0912, A12A1286. McRAE v. HOGAN et al. (two cases).        AD-042

ADAMS, Judge.

At about 1:00 a.m. on September 23, 2005, Margie McRae, a retired surgeon from California, was pulled over while driving 25 mph in a 35 mph zone on the way to her vacation home on St. Simons Island. She contends she was the target of racial profiling, and in October 2007, she filed suit in the Superior Court of Glynn County against the arresting officer, other officers, the chief of police, and several Glynn County commissioners. As part of an extended and convoluted procedural history, summary judgment was granted in favor of the defendants. McRae, acting pro se, appeals that and other rulings. Additional motions remain pending below.

The record shows that on September 21, 2007, McRae filed a complaint for damages, raising four claims, which, in her own words, are (1) racial profiling; (2)

negligent supervision; (3) negligent retention; and (4) harassment. She asserts that Officer Barbara Hartman "profiled and stopped" her based on her race and without reasonable suspicion of wrongdoing; that even though Hartman had determined that McRae had a valid license, she gave McRae a verbal warning for an invalid license; and that she filed a false police report. McRae alleges that the other defendants are liable because they failed to properly supervise Hartman; their response to McRae's complaint shows bias and "a pattern of lack of objectivity in responding to concerns"; and they "engaged in a course of conduct that has driven plaintiff away from her home on St. Simons Island." In support she alleged several prior incidents have occurred between her and the various defendants.

After the defendants answered, McRae filed two motions for partial summary judgment. In response, the defendants relied solely on McRae's testimony and did not introduce evidence of their own; and they objected to the authenticity of documents that they appear to have generated. In April 2008, the judge denied McRae's motions. On June 12, 2008, the defendants moved for summary judgment, again relying solely on McRae's testimony , and on July 22, 2008, the court granted summary judgment in their favor on the ground that McRae had failed to respond to the motion. At about the same time, the court granted the defendants' motion for a protective order

2

regarding McRae's attempt to notice certain depositions, for the reason that discovery had expired. In response, McRae simultaneously moved to vacate the court's orders, moved for an extension of discovery, and, on August 21, 2008, filed a notice of appeal. Although the reason is unclear, in October 2008, the case was returned to the superior court pending resolution of the motion to vacate summary judgment. The case remained in that posture for three years with no activity in the trial court.

On October 24, 2011, McRae moved to recuse the judge. On November 2, while the motion to recuse was pending, the judge issued an order denying McRae's motion to vacate the summary judgment order. McRae then moved for reconsideration and for a change in venue, but she also filed a notice of appeal regarding the November 2 order and all prior orders. Thereafter, McRae's original appeal was finally docketed in this Court as A12A0912, and her new appeal was docketed as A12A1286. We have consolidated the two cases for review.

Meanwhile, twelve days after McRae filed her latest notice of appeal, the judge recused herself from the case, and she later resigned. In response to the recusal, McRae moved in the trial court to vacate all orders previously entered by by the judge. The newly assigned judge entered an order noting that McRae's notice of

3

appeal serves as a supersedeas[1]; accordingly he held that he lacked jurisdiction to act on McRae's motions.

In the combined cases, McRae asserts the trial court erred (1) by granting summary judgment against her by default; (2) by granting the defendants' motion for a protective order; (3) by denying her multiple motions for partial summary judgment; (4) by not following required procedures to address her motion to recuse; (5) and by not voiding all orders entered by the original judge. In another enumeration, she argues that because the trial court has not ruled on her motion to void all orders entered by the original judge, the case is not ripe for appeal. We will address these issues in a different sequence.

1. We first address McRae's contention that the trial court erred by denying her two motions for partial summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County,* 276 Ga. 243, 245 (1) (577 SE2d 564)

---

[1] See OCGA § 5–6–46 (a) ("in civil cases, the notice of appeal ... shall serve as supersedeas upon payment of all costs in the trial court by the appellant.").

(2003). Thus, in connection with McRae's motions, we construe the facts in favor of the defendants, while, in considering the defendants' motion, we will construe the facts in favor of McRae. Because McRae's motions are so narrowly focused and because the related facts must be construed in favor of the defendants, we will address only the facts pertinent to McRae's motions in this division, and will provide a more complete recitation of the facts of the traffic stop in addressing the defendants' motion below.

(a) In her first motion, McRae attempted to establish as a matter of law and undisputed fact that Hartman performed the traffic stop without reasonable suspicion. McRae acknowledges that Hartman claims that she was weaving within her lane of travel, which McRae disputes. McRae contends the video of the incident refutes this claim. But the defendants objected to admission of the video for purposes of summary judgment,[2] and McRae failed to attempt to authenticate the video; moreover it is

---

[2] "In summary judgment proceedings[,] the rules on admissibility of evidence apply. . . ." *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 594 (1) (580 SE2d 243) (2003). See also *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991). This includes the rules for authentication of documents. See, e.g., *Davis v. First Healthcare Corp.*, 234 Ga. App. 744, 746 (1) (507 SE2d 563) (1998). And, "a document cannot be authenticated solely by evidence of its contents and appearance. [Cits.]" Id. at 747, n. 2. However, "[t]he genuineness of a writing may be proved by circumstantial evidence. [Cits.]" *Arevalo v. State*, 275 Ga. 392, 395 (5) (567 SE2d 303) (2002); *Davis*, 234 Ga. App. at 747-748 (1) And a trial court must exercise its

5

unclear from the trial court's order denying McRae's motion what action it took, if any, in response to the defendants' objection. Nevertheless, our own viewing of the video leads us to conclude that there is an issue of fact, anyway , which is material and relevant to the determination of whether Hartman had reasonable suspicion to make the stop. "The police can stop drivers who engage in erratic driving behavior, even if it is simply weaving within a lane." (Citations and punctuation omitted). *Veal v. State*, 273 Ga. App. 47, 50 (614 SE2d 143) (2005). We conclude the trial court did not err by denying McRae's first motion for partial summary judgment.

(b) In her second motion, McRae attempted to establish as a matter of law and undisputed fact that Hartman gave her a warning for driving on an invalid license even though Hartman had learned that McRae's license was valid during the stop by communication over the "TTY"; thus, McRae contends, Hartman gave a false warning. She argues that Hartman and her superiors who ratified the act engaged in an intentionally false act and that because they did not know the law, their behavior was unreasonable and indefensible. But McRae has not introduced proof of the "TTY" communication. Nor has she explained how the allegation is material to her

discretion regarding questions concerning the admission of evidence. *Davison v. Hines*, _ Ga. _ (3) (Case No. S12A0405, decided July 2, 2012).

claims. Thus we cannot conclude that summary judgment on this point was improperly denied based on the record available at the time.[3]

2. Turning next to the defendants' motion for summary judgment, we hold that the initial judge erred by ruling on McRae's "Motion to Vacate Summary Judgment Granted Defendants" – a motion addressing the merits of the case – while the motion to recuse was pending. See Uniform Superior Court Rule 25.3.[4] Although under other circumstances, we might review the motion to recuse de novo and determine whether to uphold the order entered pending the motion,[5] here, the issue is moot because the judge in fact recused herself stating that she "[had] determined that it is necessary that

---

[3] We review only the portions of the record available to the trial court at the time. *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 796 (2) (449 SE2d 128) (1994).

[4] Uniform Superior Court Rule 25.3, provides as follows:
When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted.

[5] See generally *Mayor & Aldermen of City of Savannah v. Batson–Cook Co.*, 291 Ga. 114, 119 (1) (728 SE2d 189) (2012) (we review de novo decision by initial judge presented with motion to recuse).

7

she recuse herself from hearing or ruling in the above captioned matter."[6] We therefore cannot avoid the implication that she granted McRae's motion to recuse and had reasonable grounds to do so. Accordingly, we conclude that the decision on McRae's motion to vacate summary judgment is invalid and of no effect. See *Propst v. Morgan*, 288 Ga. 862, 864 (708 SE2d 291) (2011) ("if. . . it is later determined that the judge should have been disqualified to act in the case, all proceedings *after the filing of the motion* to recuse are 'invalid and of no effect.' [Cits.]") (emphasis supplied).

3. Next, the trial court's original order granting summary judgment in favor of the defendants was based on an erroneous legal theory. The order itself makes clear that the decision was based on the fact that McRae failed to timely respond to the motion.[7] See, e.g., *Robertson v. Wheeler*, 208 Ga. App. 68 (1) (429 SE2d 714) (1993)

---

[6] The judge's recusal is in the record in A12A1286, and we may consider it. Cf. *Poetter v. State*, 244 Ga. App. 675, 676 (536 SE2d 576) (2000) (court can determine whether issue on appeal is moot based on evidence outside the record transmitted from the court below).

[7] "Unless otherwise ordered by the judge, each party opposing a motion shall serve and file a response, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion." Uniform Superior Court Rule 6.2. The defendants served their motion on June 12, 2008 by depositing it in the United States mail with sufficient postage. Service was complete upon mailing. OCGA § 9-11-5 (b). A response was due "not later than 30 days after service of the motion,"

(order plainly stated that court found no issue of fact because defendants failed to respond to motion for summary judgment). But "[t]here is no such thing as a default summary judgment." (Punctuation omitted.) *Milk v. Total Pay & HR Solutions*, 280 Ga. App. 449, 450–451 (634 SE2d 208) (2006). Rather, the effect of failure to timely respond "waives the opponent's right to present evidence in opposition to the motion. [Cits.]" *Landsberg v. Powell*, 278 Ga. App. 13, 15 (627 SE2d 922) (2006).[8]

4. Under these circumstances – where the trial court relied on an erroneous legal theory – we have discretion either to perform an independent de novo review of the record that was properly before the trial court in order to determine whether summary judgment was appropriate for another reason or to return the case to the trial court for further proceedings. *City of Gainesville v. Dodd,* 275 Ga. 834, 838-839 (573

---

USCR 6.2, although McRae was entitled to an additional three days because the motion was served by mail. OCGA § 9-11-6 (e). Thus, she was required to respond by July 15, 2008, which she failed to do. Although McRae eventually filed a response on July 28, 2008, the trial court had already issued an order on July 22, 2008.

[8] McRae, however, had already placed evidence into the record prior to when the court granted the defendants' motion for summary judgment. Indeed, she had filed her own motions for summary judgment and attached her own affidavit and other materials thereto. Furthermore, the defendants made several concessions regarding the facts in their briefs. Moreover, the judge had already denied McRae's motions for summary judgment on the ground that there was a genuine issue of material fact regarding whether McRae's car was weaving and whether she was falsely accused of driving with an invalid license.

SE2d 369) (2002). As explained by the Supreme Court, we have discretion to remand in certain cases:

> In other cases, there may be a variety of grounds advanced, with disputes pertinent to those grounds. In such cases, judicial economy may be maximized by returning the case to the trial court upon the appellate court's discovery that the trial court relied on an erroneous legal theory or reasoning. This would allow the trial court to issue rulings on grounds advanced, which could then serve as a basis for appellate review. Which course to pursue must be left to the appellate court's discretion.

Id.

A review of the facts, the legal issues, and the procedural peculiarities of this case leads us to conclude that a remand is appropriate.

(a) Construing the record in favor of McRae, the relevant evidence shows that McRae, who is African American, is from California but has multiple homes in Georgia, with two on St. Simons. At the time of the incident, she owned and kept one vehicle in California and two vehicles in Georgia, the latter two registered in this state. A little after 1:00 a.m. on September 23, 2005, McRae, accompanied by a male passenger who is also African American, was driving to her vacation home on St. Simons Island in a 1993 Ford Explorer with a Glynn County registration tag. She was traveling east on the Torras Causeway within the speed limit. As she approached

10

Marina Drive, a Glynn County police cruiser driven by Glynn County officer Barbara Hartman was at the entry ramp pointed toward the Torras Causeway with bright lights on that illuminated the interior of McRae's vehicle as she drove past, in a manner sufficient to identify the race of the occupants. Hartman pulled out and began to follow McRae. McRae proceeded onto the island and turned onto Kings Way. There was very little traffic at the time, yet Hartman drove the patrol car close to McRae's bumper then backed off in a manner that led McRae to believe that Hartman was trying to get her to speed up. But because McRae knew the speed limit along this section is 35 mph, that the limit would eventually drop to 25 mph, and because she preferred to drive cautiously at night, McRae maintained her speed of approximately 25 mph. Nevertheless, Hartman activated her lights and pulled McRae over for an investigatory stop.

McRae was wary about the encounter because of other encounters with traffic officers who were less than honest, including one where the video evidence of the traffic stop exonerated her from a charge. So she asked Hartman to make sure to turn on her microphone so that the encounter would be recorded ; no audio recording, however, is in the record. Hartman, who was loud and rude from the inception, told McRae that she was driving too slowly and that she – Hartman – thought McRae

11

might have been drinking, which McRae denied, stating, "I do not drink." Hartman did not mention any other aspect of McRae's driving or any other concerns as having been part of her the reason for the stop. Hartman asked for McRae's license, and McRae produced her California license. Hartman asked McRae for her address, and when McRae indicated it was on the license, Hartman repeatedly said McRae was being uncooperative and that she or her colleagues could arrest McRae for obstruction. When McRae gave Hartman her insurance card, Hartman forcefully snatched it out of McRae's hand, causing pain to a prior injury. Hartman also took McRae's passenger's license to check, which she later returned. McRae then asked to speak to Hartman's supervisor at the scene, and some time thereafter, Lieutenant Kenny Ellis arrived. In the interim, McRae's passenger was allowed to leave. After a dialog with Ellis, in which Ellis stated that Hartman's patrol car video would be retained, McRae departed. The traffic stop lasted "at least 20 minutes, possibly more."

Also, McRae has raised an issue of fact as to whether Hartman filed a false police report because she claimed to be driving westbound on Kings Way near St. Andrews Drive on the island when she passed McRae, whereas McRae avers that the incident began at Marina Drive, just off the island, with Hartman's vehicle lights illuminating the interior of McRae's vehicle. Although the defendants objected to the

12

authenticity of the relevant document, the defendants have conceded there is an issue of fact on this point.

McRae also has raised issues regarding the video tape of the incident. She avers that Hartman followed her for "a few miles" at 25 mph, yet a video recording only includes about 38 seconds prior to the stop, and it does not contain audio of Hartman and McRae's encounter. Although the defendants object to the introduction of the videotape on the ground that McRae has not shown it to be authentic, a trial court has the discretion to allow its introduction based on circumstantial evidence. See supra, n. 2.

Defendants contend that Hartman stopped McRae because she was swerving, but as the defendants have highlighted, there is no authenticated evidence in the record regarding Hartman's motivation, and McRae has vehemently denied swerving. She testified that at one point she shifted slightly to the right to avoid on-coming traffic and slightly left at one point to move away from roadside signs. But she added, "I did not weave even one scintilla." [9]

_____

[9] Defendants contend that by making these statements, McRae has admitted to swerving. In so doing, defendants have disregarded the rule that the evidence will be construed in favor of the nonmovant. Moreover, because the defendants objected to the authenticity of documents that they appear to have generated and rely exclusively on McRae's testimony, at the time the court granted defendants' motion for summary

(b) Several aspects of this case suggest a remand is appropriate. First, the trial court found there were issues of fact regarding McRae's claim that she was the subject of an unlawful stop and detention under the Fourth Amendment and that Hartman issued a warning regarding McRae's license knowing that McRae's license was in order. Second, summary judgment was granted in favor of the defendants on an erroneous legal theory. Third, there are issues falling within the trial court's discretion regarding the admissibility of certain evidence produced by the defendants and issues regarding the completeness and veracity of that evidence, including the possibility of fabrication of evidence, which can be relevant to a determination of qualified immunity.[10] Fourth, McRae's motion to extend discovery is pending, McRae's motion to vacate the protective order is pending[11], and the case has been

judgment, there was in fact no evidence in the record of any weaving or swerving.

[10] See generally *Riley v. City of Montgomery*, 104 F3d 1247, 1253 (11th Cir. 1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights."). Cf. *Kingsland v. Miami*, 382 F3d 1220 (11th Cir. 2004) ("falsifying facts to establish probable cause is patently unconstitutional").

[11] Because we are remanding this case for reconsideration of the defendants' motion for summary judgment and for several other interrelated matters, and because McRae's motion to vacate the protective order is pending and affected by some of these other issues, judicial economy dictates that we need not at this time address McRae's argument that the trial court incorrectly granted the protective order.

14

delayed by an unusual procedural history. Fifth, the recusal of the original judge has had an impact on the case.

Finally, and perhaps most importantly, none of McRae's substantive claims have been addressed by the court below. These claims are racial profiling, negligent supervision, negligent retention, and harassment, and some raise difficult issues and defenses such as supervisor liability, qualified immunity, and sovereign immunity. As the Supreme Court explained in *Dodd*, where "[t]here having been no rulings by the trial court on the issues raised on appeal, there are no rulings to review for legal error." Id. (citation and punctuation omitted). See, e.g., *Strength v. Lovett*, 311 Ga. App. 35, 44-45 (2) (b) (714 SE2d 723) (2011) (remanding question not reached by trial court); *DuPree v. South Atlantic Conference of Seventh Day Adventists*, 299 Ga. App. 352, 355 (683 SE2d 1) (2009) (remanding where "trial court did not rule upon the other grounds advanced by [appellee] in its motion for summary judgment.").

We therefore remand this case to the trial court for further proceedings consistent with this opinion. See, e.g., *Meredith v. Thompson*, 312 Ga. App. 697, 702-703 (719 SE2d 592) (2011) (case remanded when it had "numerous theories of recovery asserted against each of the three individual defendants" that were not addressed by the trial court).

15

*Judgments affirmed in part, vacated in part, and cases remanded. Barnes, P. J., and Phipps, P. J., concur.*