**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**December 8, 2014**

# In the Court of Appeals of Georgia

A14A1697. KOULES v. SP5 ATLANTIC RETAIL VENTURES,   JE-087
 LLC.

ELLINGTON, Presiding Judge.

SP5 Atlantic Retail Ventures, LLC ("SP5") filed this action in the Superior Court of Fulton County against its tenant, The Dolce Group Atlanta, LLC ("Dolce"), and three guarantors, including Shereen Arazm Koules, for rent and other charges associated with two commercial leases. After Dolce defaulted,[1] SP5 filed a motion for summary judgment against Koules and the other guarantors. After a hearing, the trial

---

[1] See *Koules v. The Dolce Group Atlanta, LLC*, 326 Ga. App. 637 (757 SE2d 233) (2014). In the previous appearance of this case before this Court, we determined that the trial court erred in not permitting Koules to participate in the evidentiary hearing on damages before entering default judgment against Dolce in favor of SP5. Id. at 640.

court granted SP5's motion as to Koules.[2] Koules appeals, contending that the trial court abused its discretion in excluding certain evidence from its consideration and erred in granting the motion for summary judgment. For the reasons explained below, we reverse in part, vacate in part, and remand.

The record shows the following undisputed facts. In two leases executed in 2005, Dolce leased space from SP5's predecessor-in-interest, Atlantic Town Center, LLC ("ATC"), to operate a total of three restaurants in the Atlantic Station development in Atlanta. ATC assigned all its rights, title, and interest in the two subject leases to SP5 in 2010.

The restaurants, which opened in 2007, did not generate the expected revenue, and Dolce did not make all payments due under the two leases as executed in writing. In April 2011, SP5 and Dolce terminated one of the leases by agreement. In October 2011, SP5 filed this action, seeking over $5 million in rent (plus other charges, interest, and attorney fees) allegedly due according to the terms of the two written leases. In SP5's motion for summary judgment against Koules, SP5 claimed that over

---

[2] In a separate order, the trial court granted SP5's motion for summary judgment as to the other two guarantors, Lonnie Moore and Michael Malin, who failed to respond to the motion. Such ruling is not at issue in this appeal.

2

$8 million in rent (plus other charges, interest, and attorney fees) was then due under the two leases.

Koules conceded that she personally guaranteed Dolce's leases with ATC in 2005. In answering the complaint and in opposing SP5's motion for summary judgment, however, she asserted that the parties orally agreed to modify the lease terms in August 2007, September 2008, and January 2011, and that Dolce had in fact paid as agreed, at least in part. As evidence of these alleged modifications, she identified a number of documents, including billing and payments records, series of e-mails among agents of ATC or SP5 and Dolce, and series of internal e-mails among agents of ATC and SP5. SP5 had produced these documents in response to Koules' request for the production of documents.

Two months before the hearing on SP5's motion for summary judgment, Koules served a request that SP5 admit that the documents were authentic. SP5 denied that the documents were authentic and stated "by way of further clarification" that "the term 'authentic' is vague and ambiguous" and that the documents "speak for themselves." Koules moved the trial court to determine the sufficiency of this response and to deem the requests admitted. Koules attached these documents as exhibits to her brief in opposition to SP5's motion for summary judgment, filed June

3

21, 2013. In addition, she filed an affidavit executed by her attorney; the documents were identified as exhibits to his affidavit.

SP5 did not move to strike the exhibits before the hearing on its motion. Two weeks before the hearing on SP5's motion for summary judgment, the trial court denied Koules' motion regarding her request for admissions that the documents were authentic, finding that "the term 'authentic' could be ambiguous, especially when referencing e-mails and other documents not easily subject to the traditional classification of 'authentic.'" At the summary judgment hearing, when Koules attempted to rely on the documents to support her defenses of waiver and mutual departure, SP5 objected on the grounds that the documents had not been authenticated. The trial court stated that the documents had not been authenticated and made a part of the record before the hearing and, for that reason, they were not properly before the court and that it would not consider them in ruling on SP5's summary judgment motion. The trial court stated that, unless the documents were self-authenticating, Koules had to depose witnesses or call witnesses at the hearing to authenticate the documents. Koules' counsel asked the trial court to consider evidence in the record that could be deemed sufficient to authenticate the documents, such as the fact that SP5 had produced the documents in response to Koules'

4

discovery requests, but the trial court dismissed that possibility, insisting that Koules should have deposed a witness.

In the introductory paragraph in the order granting SP5's motion for summary judgment, the trial court ruled that the motion was granted "as to liability only as to . . . Koules." The trial court provided detailed analysis for its ruling that "Koules is obligated under her Guaranty to pay the obligation of . . . Dolce." In the concluding paragraph, the trial court ruled that there is an issue of material fact as to the amount of damages owed to SP5 and reserved that issue until a jury trial. The court repeated that summary judgment was granted "as to . . . Koules as to liability only."

1. SP5 contends, based on the limiting language that the trial court granted summary judgment as to Koules "as to liability only," that "it is obvious that any error" in excluding the documents at issue "was harmless, since [Koules] was successful in preventing summary judgment as to damages." SP5 contends that Koules' right "to present evidence as to her waiver and mutual departure defenses [is] preserved for trial." The trial court's order, read in its entirety, however, expressly sets out several other rulings with the effect that the amount of Koules' liability for damages will be determined under the terms of the leases *as formally executed in writing*. The trial court ruled that "[t]he obligation to pay rent is clear under the

5

Leases," citing to the written terms of the leases, and "Dolce did not pay as required."

In addition, with regard to other amounts SP5 claims are due, the court ruled that

> [t]he Leases and Georgia Law are clear as to the accrual of interest on
> past due rent. . . . The Leases are clear as to the obligation to pay late
> charges if rent is not paid in a timely manner. . . . [And,] [t]he Leases
> and Guaranty also provide for payment of [attorney] fees in the event of
> default. . . .

In explaining each ruling, the trial court cited to the terms of the leases as written. A

key component of Koules' defenses of waiver and mutual departure, however, is that

Dolce's liability, and therefore her derivative liability as a guarantor,[3] should *not* be

determined under the terms of the leases as executed in writing.[4] She contends

---

[3] See *Hardaway Co. v. Amwest Sur. Ins. Co.*, 263 Ga. 698, 700 (436 SE2d 642) (1993) ("Generally, a surety or guarantor may assert all defenses to a contract which would be available to his principal, with the exception of personal defenses, e.g., infancy, incapacity, bankruptcy, etc.") (citation and punctuation omitted); OCGA § 10-7-2 ("The obligation of the surety is accessory to that of his principal; and, if the latter from any cause becomes extinct, the former shall cease of course, even though it is in judgment. If, however, the original contract of the principal was invalid from a disability to contract and this disability was known to the surety, he shall still be bound.").

[4] See OCGA § 13-4-4 ("Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."); *B-Lee's Sales*

moreover that Dolce *did* pay as required by the parties' *oral* agreements. The trial

court's express rulings cannot be reconciled with SP5's contention that Koules retains

the right to offer evidence at trial to show that SP5 waived its right to enforce the

leases as written and/or that the parties mutually departed from the terms of the

formal leases. Accordingly, we cannot accept SP5's invitation to dismiss any error in

the trial court's evidentiary ruling as harmless.

2. Koules contends that, by declining to consider circumstantial evidence that

the documents at issue are authentic, the trial court abused its discretion and applied

the wrong legal standard in ruling on the admissibility of the documents.

"Admissibility of evidence on motion for summary judgment is governed by the rules

relating to form and admissibility of evidence generally." (Punctuation and footnote

omitted.) *Capital City Developers, LLC v. Bank of N. Ga.*, 316 Ga. App. 624, 625-626

(1) (730 SE2d 99) (2012). "A trial court's decision regarding the admission or

exclusion of evidence is reviewed for an abuse of discretion." (Citation omitted.)

---

*Co. v. Shelton*, 141 Ga. App. 870, 872 (1) (234 SE2d 702) (1977) (Even where an attempt to modify a written lease agreement does not satisfy the Statute of Frauds, where "a modification of the written contract has been agreed to by all parties, performed by one and accepted by the other, there is a waiver of the provisions of the original contract as to rental amount.") (citations omitted).

*Steed v. Fed. Nat. Mortgage Corp.*, 301 Ga. App. 801, 807 (1) (b) (689 SE2d 843) (2009).

> A proper application of the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court even though we would have gone the other way had it been our call. That said, while the abuse-of-discretion standard presupposes a range of possible conclusions that can be reached by a trial court with regard to a particular evidentiary issue, it does not permit a clear error of judgment or the application of the wrong legal standard.

(Punctuation and footnotes omitted.) *Williams v. State*, _ Ga. App. _ (1) (763 SE2d 261) (2014).

Georgia's Evidence Code provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a).[5] Under long-standing Georgia law, "[t]he process known as authentication of writings is the means by which a writing is shown to be in fact what it purports to be in order to introduce it in evidence." (Citation and

---

[5] We note that the hearing on SP5's motion took place in August 2013, after the effective date of Georgia's new Evidence Code, which applies to any motion, hearing or trial commenced on or after January 1, 2013. Ga. L. 2011, p. 99, §§ 2, 101.

8

punctuation omitted.) *Consolidated Freightways Corp. v. Synchroflo, Inc.*, 164 Ga. App. 275, 277 (1) (294 SE2d 643) (1982). "Authentic" does not mean that the document is a legally valid or enforceable instrument; authenticity is merely a matter of "identification, or showing that this writing is the one in question." (Citation and punctuation omitted.) Id.

The Evidence Code recognizes a wide variety of means by which a party may authenticate a writing; the use of circumstantial evidence is one of these methods. OCGA § 24-9-901 (b) (listing "[b]y way of illustration only, and not by way of limitation," ten means of authentication or identification conforming with the requirements of the section).[6] Production of a document by a party during discovery, along with other circumstantial evidence, is evidence of authenticity, particularly when the party who produced the document never claims it is not authentic or genuine. *Gulfstream Aerospace Svcs. Corp. v. U. S. Aviation Underwriters*, 280 Ga.

---

[6] The law was substantially similar before the effective date of the new Evidence Code. See *Nyankojo v. N. Star Capital Acquisition*, 298 Ga. App. 6, 8 (679 SE2d 57) (2009) ("[O]ur rules of evidence provide a wide variety of means by which a party may authenticate a writing. The use of circumstantial evidence is one of these methods. And the content and appearance of a document are two circumstances considered when our courts analyze whether there is sufficient circumstantial evidence of authentication.") (punctuation and footnotes omitted); *Davis v. First Healthcare Corp.*, 234 Ga. App. 744, 746 (1) (507 SE2d 563) (1998) (accord).

App. 747, 760 (2) (b) (635 SE2d 38) (2006); *Salinas v. Skelton*, 249 Ga. App. 217, 220-221 (1) (547 SE2d 289) (2001); *Davis v. First Healthcare Corp.*, 234 Ga. App. 744, 747 (1) (507 SE2d 563) (1998). The appearance and content of a document may also be circumstantial evidence of authenticity. OCGA § 24-9-901 (b) (4) ("[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *Nyankojo v. N. Star Capital Acquisition*, 298 Ga. App. at 8 (accord); *Davis v. First Healthcare Corp.*, 234 Ga. App. at 747 (1) (accord).

By way of illustration, Exhibit 3 to Koules' brief in opposition to SP5's motion was summary judgment purports to be a printout of an e-mail dated April 21, 2011, from Tom Miles, "Vice President/General Manager - Atlantic Station, Town Center at Atlantic Station," to Stephanie McCaster, regarding "Dolce," which includes a statement that "we" should invoice Dolce for 10 percent rent from the first of the year, the rate being "the agreement with Lonnie [Moore], one of [Dolce's] partners." Under the applicable law discussed above, therefore, the question of whether Exhibit 3 is "authentic" is simply whether it is what it purports to be, that is, a printout of an e-mail dated April 21, 2011, from Tom Miles to Stephanie McCaster, with the content

10

shown.[7] We conclude that the trial court failed to exercise its discretion in ruling on the admissibility of Exhibit 3 because the record shows that the court failed to consider the wide variety of means by which Koules could authenticate the writing. Specifically, the trial court refused to consider circumstantial evidence of its authenticity, as urged by Koules' counsel, such as the appearance, contents, and substance of the document, which included Tom Miles' professional contact information and discussions of non-public details relating to Dolce's and other tenants' leases, and the fact that SP5 produced the document in response to Koules'

---

[7] As one commentator has explained, there are no special rules under Georgia law

> governing the authentication of electronic documents or communications. Electronic records and e-mails are to be treated the same as ordinary writings for purposes of authentication and admission. As with all authentication issues, the trial court should admit the evidence if a reasonable jury could find that the evidence is what it is claimed to be. . . . Every form of electronic communication can be "spoofed," "hacked," or "forged." But this does not and can not mean that courts should reject any and all such communications. Indeed, the vast majority of these communications are just as they appear to be – quite authentic. The goal is to supply sufficient, nonhearsay evidence as to the identity of the source such that a reasonable factfinder could conclude that the evidence is what it is claimed to be.

(Footnotes omitted.) Paul S. Milich, *Ga. Rules of Evidence*, § 7:6 (database updated September 2014).

11

discovery requests.[8] This is not to say that a print-out of an e-mail is self-authenticating under Georgia law,[9] only that the trial court should have considered the contents, appearance, and substance of each document to determine whether a reasonable juror could find the document was authentic under the applicable standard. *Salinas v. Skelton*, 249 Ga. App. at 221 (1). The same analysis applies to the other documents at issue. Accordingly, the trial court's evidentiary ruling is reversed.

3. Koules contends that the trial court erred by overruling her waiver and mutual departure defenses and entering summary judgment on liability against her. Because the trial court failed to exercise its discretion under the applicable standard in ruling on the admissibility of documents, see Division 2, supra, the proceedings in the trial court did not delineate the body of evidence that was properly before the trial court in ruling on SP5's motion for summary judgment. Because some or all of the documents which the trial court excluded may have been admissible, we cannot determine on de novo review whether Koules carried her burden of coming forward

---

[8] We note that SP5, in its appellate brief, does not contend that the trial court properly exercised its discretion in ruling on the admissibility of the documents at issue, only that any error was harmless. See Division 1, infra.

[9] See OCGA § 24-9-902 (specifying types of documents for which extrinsic evidence of authenticity shall not be required as a condition precedent to admissibility).

with rebuttal evidence. See *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996).[10] Accordingly, the trial court's order granting SP5's motion for summary judgment is vacated, and this case is remanded for further proceedings consistent with this opinion.

*Judgment reversed in part and vacated in part, and case remanded. Phipps, C. J., and McMillian, J., concur.*

---

[10] On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. In order to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. The movant has the original burden of making this showing. Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence. However, if the respondent successfully produces such rebuttal evidence in the form of an affirmative defense, the burden shifts back to the movant to establish the non-existence of a genuine issue of fact as to each affirmative defense. Furthermore, the movant's papers are carefully scrutinized and all doubts are resolved against [it], while the respondent's papers are treated with considerable indulgence. (Citations and punctuation omitted.) *Gentile v. Bower*, 222 Ga. App. 736, 736-737 (477 SE2d 130) (1996).